# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NORFOLK & WESTERN R. R. CO. V. PHELPS.

### MARCH 29th, 1894.

RAILROADS—*Employees—Negligence of superior—Case at bar.*—A railroad company *held* liable for an injury to an engine hostler caused by the negligence of his superior, the yardmaster, in sending him forward with the engine on a track upon which the yardmaster had thrown some box cars in charge of a brakeman, although the negligence of such brakeman (his fellow servant) in bringing the cars too close to a switch on which such hostler is directed by his said superior to take the engine, contributed to the injury.

Error from judgment of circuit court of city of Lynchburg, rendered at its November term, 1893, in an action of trespass on the case for personal injuries wherein Archie B. Phelps was plaintiff and the Norfolk and Western Railroad Company was defendant. The judgment being adverse to the company it brought the case here on error. Opinion states the case.

*Kirkpatrick & Blackford,* for plaintiff in error.

*F. P. Christian* and *John L. Lee,* for defendant in error.

LACY, J., delivered the opinion of the court.

The action was for injuries to the person, by Archie B. Phelps against the plaintiff in error company. The injuries were received by the plaintiff, Phelps, while in the discharge of his duty as "hostler"; that is, an employee who receives and takes

VOL. XC—84.

A—Point of Collision.

B—Box cars under Rowsey's charge.

C—Engine on Main Track under Hannegan's control.

D—Engine coming from Coal Wharf under Phelps' control, backing.

charge of an engine when it comes in the yard after a run on the road; that is, an engine-man on an engine in the yard, without a train. His duties are to relieve the engine-man and fireman on the engine when it arrives bringing a train in, or coming without a train. He cleans and takes the engine on one of the yard tracks to the coal wharf, supplies it with coal, runs it down to another point, called the " water tank," and supplies it with water, oils it, and brings it to the point where it is needed for another trip, or disposes of it as his directions are. Usually, while he is doing this, and in the present case it was so, the yardmaster with the yard engine is shifting the cars and making up the train to go out. About 10 o'clock of the night of June —, 1893, a train arrived from the west at Island yard, in Lynchburg. Coming from the west, as is indicated on the plat or diagram appended, on the track marked " Main Line," and near to and a little west of the words " Main Line," Yardmaster Hannagan took charge of the train, and with his crew, one of which was the plaintiff, Phelps, he detached the road engine, and put it in charge of Phelps, the " hostler," and sent him down a parallel track, shown on the diagram as " New No. 1," to the coal wharf, situated further east on the extension eastward of New No. 1. He then threw or kicked ten box cars down New No. 1 in the same direction as Phelps had gone, while he himself, with the yard engine, marked " C," proceeded likewise in the same direction on the main line, which ran parallel with the track New No. 1. As he passed by the ten box cars, six of which are shown on the diagram, marked " B," he said to a brakeman belonging to his yard crew, named Rowsey, in whose charge he had placed the ten drifting cars, " Look out for them, Bill," and moved on east, so as to pass a short lead from the main line to track No. 1 New, at the point on the diagram where the engine, C, is marked, go into the New No. 1 track, and take charge again of the ten drifting cars in front of them. As he stood with his engine waiting for the drifting cars to come on down New

No. 1 to the short lead, he noticed Phelps coming slowly back, and waiting, for safety, east of this short lead, until these cars had passed out of his way, so that he, Phelps, might go on to a point further west, marked "A" on the diagram, where he was to take the track marked "To water tank and turn table," at A, and where he feared collision or obstruction with the ten drifting cars. All was darkness, but he knew these cars had been thrown into track New No. 1, and were in his front; and if they reached the point A, where the water tank lead branched off from New No. 1, before he did, they must obstruct his way; and as they were drifting without an engine, in the care of one man, and in the darkness, he hesitated to go further, as there was danger of collision until they had again come under control of the yard engine under the care of Hannagan, the yardmaster. Hannagan had thrown the switch at the short lead, to let himself into the short lead, and was about to throw the switch which would let him with his engine into New No. 1 at X. He directed Phelps to go on up there—go on back out of the way. Phelps was running tender in front. He (Phelps) had checked up because of the darkness and the open tracks in front of him, on one of which he knew a train of ten cars was running down towards him; but Hannagan, who was his superior, came down and said, "And what are you waiting for?" Phelps replied, "Tom, I am afraid they ain't clear up there." Hannagan said, "Go on up there," and Phelps moved on. Seeing Hannagan coming on with his yard engine, he thought it all right. As he reached the point A, intersection of New No. 1 and the tank lead, the switch was set right for him, showing him the white light, and against Rowsey, with his ten cars; so he passed the switch with his engine. But just then Rowsey had come down with his box cars, and the switch showed him the red light, and he probably did not intend to attempt to come through and force the switch; but he had not quite halted, and Hannagan had not yet thrown the switch for him, and so he came so near to the switch that his leading car

struck the cab, and knocked off that side and some of the braces, and caused the hot water to come out and scald and greatly injure Phelps. The tracks running out of each other had not widened enough to allow the Rowsey cars to come so close to the switch. In other words, he was within what is called the "danger post" at switches ordinarily; but here there were no such guards against this species of collision. Phelps sued for his injuries and seeks to hold the company liable in damages.

If the injury was caused by negligence, whose was it? Hannagan's, beyond a doubt. He did not err on the side of safety, but recklessly, in his unexplained haste, ordered Phelps forward, and undertook to know that there was no danger, perhaps because he had not yet thrown the switch for Rowsey. He did not know how close Rowsey would come to that switch in the darkness, especially as there were no danger posts there, or, if there, invisible in the darkness. He knew that Rowsey had only a limited control of the cars he was on—he could stop them with the brake, but he could not move them back at all, nor stop them very promptly either. He was there representing the company, and he doubtless knew the grave responsibilities resting on him—that Rowsey was, in obedience to his orders, coming that way—and he sent Phelps forward with an order he was bound to obey. He knew that at a switch the two tracks for a short space are intermingled, and that there was danger of collision in passing, if the box cars should come too close, and that the switch could not prevent them from coming too close for safety, as it did not in this case. Rowsey had not violated the switch, and yet he had reached the danger point. It cannot be said that Rowsey was guilty of any negligence. He had been told to drop them along down slowly, and Hannagan would come in and get them; and he doubtless was expecting Hannagan to throw the switch and let him out, or come in and get him; and he was going very slowly—barely moving. But, if he was guilty of negligence, it does not alter the

case. It was the negligence of the company, through its agent and representative on the scene, Hannagan, and Phelps was guilty of no negligence which contributed to the accident; and, although Rowsey had been guilty of concurring negligence with Hannagan, that could not be charged to Phelps, although his fellow servant. The action of Hannagan in sending Phelps forward, under the circumstances, was an unnecessary exposure of the employee to danger, by which he was injured without fault on his part, and the company is liable to respond in damages. See *Railroad Co.* v. *Brown*, 89 Va., 753, and cases cited. The case having been decided in the circuit court in accordance with these views, the same must be affirmed.

JUDGMENT AFFIRMED.