## CITY COUNCIL OF AUGUSTA *v.* OWENS.

1. The petition in this case sets forth a good cause of action, and therefore the court did not err in overruling the general demurrer thereto.
2. There was no merit in the special demurrer based upon the ground that the petition did not allege where the quarry was located. It was sufficient in this respect, because it informed the defendant of the time of the injury that occurred at this quarry, the name of defendant's superintendent of the work there, gave a general description of the quarry, and set forth such facts and circumstances as would leave no room for uncertainty or doubt to the mind of the owner, who was the defendant, as to what quarry was referred to in the petition.
3. Where a municipal corporation is engaged in operating a rock quarry which it owns, a person placed there by its authority as general superintendent of the work, with power to direct the movements of its laborers, not joining with them in the labor, and being as to this business the city's sole and only representative, is the vice-principal, and not the fellow-servant of the workmen under his charge; and this is so whether it was within the scope of his authority to engage the workmen or not.
4. Though the immediate cause of a physical injury to an employee may be the negligent act of a fellow-servant, the master is liable, if the fellow-servant did this act under and in obedience to an order given by a vice-principal of the employer, and if the giving of the order was itself an act of negligence as to the defendant.
5. There was no error in the court charging the jury : "It was the duty of the defendant to furnish a reasonably safe place for this man to work. It was the right of the plaintiff to assume that the place was safe when he was directed to go to it." In the light of the pleadings, testimony, and the entire charge of the court, the language quoted, which is, abstractly considered, a correct statement of a general rule of law, was not calculated to mislead the jury.
6. A request to charge on a defense not set up by the answer, either by affirmative statement or by denial of any of the allegations in plaintiff's petition, was properly refused. There being an agreed statement of facts "that the tract of land on which this accident happened formerly belonged to the Augusta Canal Company ; that the right to quarry was conveyed to the City Council of Augusta under the provisions of the act of 1849, and that the City Council of Augusta has police jurisdiction over the tract ; . . that this tract comes within the provisions of the act," it was not ultra vires to operate the quarry for the purpose of obtaining the

material to repair the streets or a canal which the defendant had authority to own and operate.

7. The testimony in the present case showing that the operation by defendant of the quarry in question was a ministerial act on its part, and there being no evidence to indicate that the work in which the city was engaged was governmental in its nature, the court did not err in refusing a request of defendant's counsel to charge the jury on this subject.

8. A person whose capacity to labor has been permanently diminished by ·physical injury wrongfully inflicted upon him by another can recover damages therefor, notwithstanding there may have been no proof as to what such person's earnings were before or after the injury. Hence, there was no error, in the light of the pleadings and the evidence in this case, for the court to charge the jury on the subject of the right of plaintiff to recover for his decreased capacity to work, if the jury found from the evidence that the injury received was permanent.

9. There being nothing either in the pleadings or the evidence which gave the jury a right to find any damages growing out of the diminished earnings of plaintiff for his labor resulting from the alleged injury, it was error for the court to charge the jury to inquire whether there would ·have been any increase in plaintiff's earning capacity if this injury had not occurred, and to say how much that was affected by the injury, and then allow what they believed would compensate him for that loss.

10. The above covers all the questions of importance made by the present record. While there are several other grounds in the motion for a new trial relating to requests to charge, after comparing them with the entire charge of the court actually given, they are not of sufficient merit to require notice. The charge as a whole, except as specified in the ninth headnote above, was full and fair, and covered all the material issues between the parties. The judgment denying a new trial is reversed only because of the error therein indicated.

Argued June 21, — Decided July 14, 1900.

Action for damages. Before Judge Eve. City court of Richmond county. January 16, 1900.

*William H. Barrett*, for plaintiff in error.
*J. R. Lamar* and *E. B. Baxter*, contra.

Lewis, J. Benjamin Owens instituted in the city court of Richmond county an action for damages against the City Council of Augusta, substantially making by his petition the following case: Defendant, in May, 1897, at the time of the injuries to plaintiff hereinafter mentioned, owned and operated a certain quarry from which it was engaged in obtaining rock to be used by it in making improvements on its streets, in keeping the same in proper repair, and for other like corporate purposes, within the scope of its duty and· authority. It had in

its employ a large number of laborers who were engaged in getting out rock from the quarry for defendant's use, as aforesaid. On said date plaintiff was engaged as one of said laborers in defendant's employ. This work at defendant's quarry was conducted under the superintendence, supervision, and control of one John Joy, who directed the same, being clothed by defendant with full power and authority, as its representative and agent, over the actual conduct of the work at said quarry. His duties were those of supervision, direction, and control. Petitioner and all the laborers and employees were, while engaged in said work, amenable to his orders, required to obey them, and to look to him as their superior for direction in said work.. They were thus subordinated to him as their superior or principal. He had authority to discharge them for cause. This quarry, at the time mentioned, consisted of a large level space, or area, at the back of which rose, almost perpendicularly, to the height of eighty or ninety feet, a wall of rock, from which, by blasting, drilling, and quarrying, rock was obtained for defendant's use, and from the face of which the rock, when loosened, fell to said area, whence it was removed. On said date plaintiff went to his work as usual at the quarry ; and, during the early portion of the morning, Joy ordered him, with two other laborers, to go to the foot of said quarry, the base of said wall or rock, and there drill a hole pointed out by said Joy, in order that a blast might be placed therein ; which work was in the usual line of plaintiff's employment at the quarry, his duty being, in connection with drilling said hole, to drive the drill with a hammer. One of the other two laborers held the drill, while the third was engaged with plaintiff in driving the same. While being thus occupied for a short time, and when in. the act of striking the drill, a piece of rock, falling from above, struck him upon the head, inflicting injuries hereinafter set out. At the time the order was given him by Joy, the said Joy, without warning to petitioner, negligently ordered two other laborers to go to a point on the face of the quarry wall almost directly over the spot where plaintiff was at work when struck, and about seventy-five feet above him, and there to quarry out some rock which had been loosened by a blast. One of said laborers, in obedience to said orders, after reaching

the place designated by Joy, in ignorance of petitioner's position, in the usual and ordinary method, did with a crowbar loosen and move, without negligence, from its place a large piece of rock; the same rolled down the face of said wall, and in its course broke in pieces, one of which struck plaintiff on the head. It was charged that the act of said Joy in sending laborers to quarry out rock almost above plaintiff's head was gross negligence, was in reckless disregard of the safety of plaintiff and those working with him, and was a violation of the duty which Joy owed plaintiff; that this improper and negligent conduct of Joy rendered plaintiff's position excessively and unusually perilous, and perilous in a manner and to an extent which plaintiff could not possibly have anticipated or foreseen; that this conduct was the cause of plaintiff being struck by the rock and injured; that he did not know or suspect, nor could he by proper diligence have known or suspected, that said laborers were quarrying above him; that he was thereby subjected by defendant, acting through Joy, to a risk not reasonably incident to his employment; and that when he was hurt he was exercising all due care and diligence. The blow rendered him unconscious, and he remained so for some time; was carried to a hospital, where he remained for several weeks under the care of a competent physician; his skull was crushed in by the blow; a portion of same had to be removed, and his brain is now protected at that point only by his scalp. As a result thereof he is constantly exposed to danger of serious injury, and even death; he is thereby caused great and constant distress and apprehension of mind, and said condition will be permanent; he suffered great pain after the injury, has continued to suffer ever since, and will continue to suffer such pain as long as he lives. His capacity to labor and earn money has been greatly and permanently diminished, and this condition of impaired capacity will continue. He alleges his damages to be $5,000, for which he prays judgment.

To this petition a demurrer was filed, first, on the ground that there is no cause of action set forth in the petition; and second, because there is no allegation in the petition showing where the quarry at which the accident occurred is located. This demurrer was overruled, to which judgment exceptions

pendente lite were filed, and error is assigned thereon in the main bill of exceptions. The defendant, at the same time, answered, admitting the truth of the allegations as to owning and operating a quarry from which it was engaged in obtaining rock for the purposes mentioned in the petition, but not admitting that such work was within the scope of its duty and authority. It admits that Joy was in charge directing the work at the quarry; that petitioner and all the laborers and employees were, while engaged in said work, amenable to his orders; and that, in so far as these facts warrant the conclusion, said employees were subordinate to Joy, but denies that Joy had authority to discharge said laborers. It admits that Joy ordered two laborers to go to a point on the face of the quarry wall, to loosen and throw down rock, and that one of the rocks thus thrown down broke into pieces, and one of the pieces struck plaintiff in the head. It neither admits nor denies, for lack of knowledge, that one of the laborers, in ignorance of petitioner's position, in the usual and ordinary method, did with a crowbar loosen and move without negligence from its place a large piece of rock; but denies that the order was given said laborers without warning to petitioner, or given negligently, and denies that the spot where said laborers were directed to go was almost directly over the spot where plaintiff was at work when struck. It admits that plaintiff was struck in the head with a rock. The answer further avers that while it is true that a plane running along the face of the wall of said quarry would be almost perpendicular to the surface of the area in front thereof, the quarrying has been so constructed as to leave along the face of the wall thereof wide ledges running at an angle from near the top to the bottom thereof, somewhat as a road is built along the face of a precipice; that these ledges were so constructed as to be used as slides or ways for rock quarried from the face of the quarry and rolling along them to the bottom; that such ledges have been used for a long time for such purpose, and are still so used; that such use was safe and proper, was known to petitioner, was a regular incident to the work in which petitioner was engaged, and did not render the position of plaintiff unusually perilous. The answer further alleges, that on the day previous to the injury, and on the morning of the same day as

the injury, rock had been loosened and thrown down from the same place whence the rock, a piece of which struck petitioner, was thrown, and petitioner and the other laborers were working in approximately the same place on the surface of the area below the wall as where petitioner was standing when injured; that such relative position of those working below and those quarrying above was usual, was known to petitioner, and was a regular incident of the work; and that the rock thus loosened or quarried from above had been descending along the ledge provided therefor, without any unusual danger or premonition thereof. The point from which the rock was being loosened was in full view of petitioner, and he did see, or could have easily, by the use of the slightest diligence, seen, the men working there. Petitioner knew the place whence the rock was being loosened, knew that the laborers had been sent there to do this work by throwing down rock, and knew as fully and as well as defendant, or any of its agents, the danger incident to his position. The injury to plaintiff was caused by an unforeseen accident, without fault or negligence on the part of the defendant, and this defendant should not be held liable therefor.

It is unnecessary to give in this report a synopsis of the evidence. Suffice it to say, that the plaintiff by his testimony substantially made out the case alleged in the petition; and the defendant introduced testimony tending to establish the main elements of its defense. The jury returned a verdict for the plaintiff for $2,000; whereupon the defendant moved for a new trial. The motion was overruled, and upon this judgment error is assigned in the bill of exceptions.

1. We have no hesitancy in saying that this petition set forth a good cause of action, and that the court did not err in overruling the general demurrer thereto. The main charge of negligence which seems to be relied upon by the plaintiff in his pleadings is the conduct of defendant's superintendent of this work at the quarry, in sending plaintiff to the particular place where he was hurt, and at the same time, without warning to him, sending laborers to a point almost directly over his head, some seventy-five feet above him, for the purpose of taking out rock that had been blasted, and tumbling the same down to the place below where plaintiff was stationed. One of the rocks

thus loosened and intended to be thrown down, doubtless upon the ledge, broke, and one of the pieces struck plaintiff on the head, causing the injury. As to whether this was negligence, and shown to be negligence by the testimony to the satisfaction of the jury, is a question peculiarly for them to determine; and the court would have erred if it had sustained the demurrer upon the theory that the petition set forth no cause of action.

2. Nor do we think there is any merit in the special demurrer on the ground that the petition did not allege where the quarry was located. The petition does give a description of the quarry; it alleges that it was owned by the defendant, that is the City Council of Augusta; that petitioner was in its employment at work at the quarry. It further gives the name of the superintendent employed by the defendant to take charge of the works at the quarry, which was not denied. It describes the grounds, the wall of rock, and the character of the work engaged in at the quarry. It does seem that the owner of such an immense industry and enterprise as this would readily have known what particular quarry, even if it had more than one, the plaintiff was referring to in his petition. In fact, the answer filed at the time of the demurrer shows upon its face that it knew exactly what quarry was referred to in the petition; and even if there was any error in overruling this special ground of demurrer, it certainly worked no harm whatever to the defendant. In 6 Enc. Pl. & Pr. 368, this principle is announced, and the author cites a number of authorities to sustain the text. It is there said: "Although a demurrer may have been improperly overruled, yet, if the demurrant was not harmed by such ruling, judgment will not be reversed on account of the harmless error." Besides this, the principle that, in pleading, less particularity is required when the facts lie as much within the knowledge of the adverse party as in that of the party pleading, is so well established, and sustained by such abundant authority, that we think it useless to discuss or cite authority on the subject.

3. In the third ground of the motion for a new trial exception is taken to the following charge of the court: "I charge you that if Joy was a foreman or boss of the city quarry where plaintiff was injured, in the sense that he had full control of

the operations at the quarry and full authority to give orders and to direct and control, as superior, the movements and actions of the employees of the city working in the quarry; and if they were subject to his orders and directions therein; and if he took no part in the actual work at the quarry himself, but merely directed and superintended it; and if he had authority to suspend employees or discharge them, subject to the final action of a higher city official as to such discharge, then Joy was not a fellow-servant of plaintiff, but was the vice-principal of defendant." The objection to this was, that it took from the consideration of the jury the determination of the fact as to whether or not Joy was a fellow-servant with the plaintiff, and shut out from consideration the fact that the city retained the general supervision of the quarry. We think, in the light of the pleadings and the testimony, the charge of the court complained of was entirely correct. It appears from the allegations and the proof that a municipal corporation, the defendant in this case, was engaged in the business of operating a quarry. Joy was placed there by the defendant as a general superintendent of the work, with authority to direct the movement of the laborers, not joining with them in the labor, and, as to this particular business, was the city's sole and only representative. It necessarily follows from the facts alleged and proved that the relation he sustained to the plaintiff was that of a vice-principal and not a fellow-servant. If his duties and the power with which he was clothed did not constitute him a vice-principal, then it would be an exceedingly difficult matter to conceive of how any municipality or other corporation could be held responsible for the acts and conduct of any agent employed to superintend and control its subemployees. It is complained that this charge excluded from the consideration of the jury that the city retained the general supervision of the quarry. In one sense that is true; but not more so in this case than corporations have occupied in many other cases in which, under repeated adjudications of this court, they have been held responsible for the negligent acts of sub-bosses towards employees under their immediate control. This record fails to show that any other official, agent, or employee of the city than Joy had anything whatever to do with superintending the con-

duct of the work and directing the laborers engaged therein. In *Bain* v. *Athens Foundry*, 75 *Ga.* 719 (2), it was decided: "Although two persons were employed by the same master, yet where one of them was employed as a blaster for the purpose of removing certain rocks on the master's property, and alone had charge of the work of blasting, and the other had nothing to do with it, but was employed as a wood-workman in the foundry of the master, they were not fellow-servants in the legal sense of the term, and a charge based on that assumption was erroneous, though it may have been a correct abstract statement." In *Blackman* v. *Thomson-Houston Co.*, 102 *Ga.* 64, it was decided: "While the person occupying the inferior position is, in a broad and general sense, a coemployee, he is not a fellow-servant with the person in authority over him, in the sense he could not recover for injuries sustained by him in consequence of the negligence of such person." See the opinion of Justice Atkinson on page 68 and following; and it will clearly appear from those facts that the person there who was regarded in the capacity of a vice-principal did not occupy any more authoritative relation, even if as much, to the employees as did Joy in this case to the plaintiff. See also *Cooper* v. *Mullins*, 30 *Ga.* 146; *Augusta Factory* v. *Barnes*, 72 *Ga.* 227–8; *Krogg* v. *Railroad Co.*, 77 *Ga.* 214; *Cheeney* v. *Ocean Steamship Co.*, 92 *Ga.* 726; *Ellington* v. *Beaver Dam Co.*, 93 *Ga.* 57.

The above disposes of the questions raised by the 13th, 14th, and 15th grounds of the motion for a new trial, in which error is assigned upon the refusal of the judge to give to the jury certain requests of counsel for the defendant. The thirteenth ground complains of error in refusing a request to charge the jury as follows: "If you believe that Joy had not power to employ or discharge, but that his duties were only to direct and act as a foreman and boss, directing the men where to work, and engaged in a common pursuit with Owens, you will be authorized to find that Joy and Owens were fellow-servants. And if you so find that they were fellow-servants, and even should believe that Joy was negligent and that his negligence caused the injury to Owens, Owens could not recover." The court gave that in charge with this qualification: "I give you that in charge, gentlemen, with this qualification: that if you find

that Joy was not in control and had authority, but was simply a foreman with control of the work assigned them, and was engaged along with the others in the actual work, then he would not be a vice-principal, but only a fellow-servant, and negligence on his part would not render the city liable." We question very much whether the charge of the court, even with that qualification, was correct under the testimony in this record, for there was no evidence that Joy was engaged in the same sort of service with this plaintiff. On the contrary, the plaintiff was a common laborer, whose business was to handle tools, engage in manual labor, and work upon the rock. Joy was not engaged in any such service. He was simply the superintendent and supervisor of the work that was carried on by the laborers in the quarry. We are inclined to think that the testimony did not authorize the charge that was given, and if there was any error in it, it was against the plaintiff instead of the defendant. We do not, however, decide this, as no exception thereto was filed by the plaintiff.

4. In the fourth ground of the motion for a new trial it is alleged that the court erred in giving the following charge to the jury: "The employer is liable for injuries resulting from the unsafe condition of a working place, even though brought about by the negligence of a fellow-servant or fellow-servants of the employee, if such fellow-servant acted under the orders of the employer and such orders were negligent on the part of the employer as to the injured party; provided the injured employee was not guilty of negligence in going into the dangerous place." The objection to this was, that it prevented the jury from arriving at a conclusion, warranted by the evidence, that the proximate cause of the injury to plaintiff was the negligence of his fellow-servant Elliott. From a careful review of the evidence we are not prepared to say that there was sufficient testimony to charge Elliott with any negligence. We do not decide that question, however, but, assuming that he was negligent, we think the charge was sound law, for the evidence shows that he was simply carrying out the instructions of Joy, for whose negligence the defendant was liable. In Norfolk R. R. Co. v. Phelps, 19 S. E. Rep. 652, the Supreme Court of Virginia decided: "If an injury be caused by the concurring neg-

ligence of a fellow-servant and a superior who is not a fellow-servant, the master is liable." In *Augusta Factory* v. *Barnes*, 72 *Ga.* 227–8, this doctrine is announced in the opinion of Justice Hall, which principle is embodied in the seventh headnote on page 218. Referring to the case of *Central R. R.* v. *DeBray*, 71 *Ga.* 406, the court says, "We carefully examined our previous decisions, together with the authorities in the text-writers, and the cases from the English courts and the courts of this country, and came to the conclusion that, where the plaintiff used all ordinary care and diligence to avoid the injury occasioned by the negligence of the principal's other servants, with whom he was disconnected at the time, and where he was acting in obedience to the orders of another servant over him, and whose orders he was bound to obey, that he had a right to recover for the injury inflicted under such circumstances." See also *Cheeney* v. *Ocean S. Co.*, 92 *Ga.* 726. This disposes of the 6th, 17th, 18th, 19th, and 23d grounds of the motion for a new trial. Considering the requests to charge in the light of the entire charge, there was no error in refusing them.

5. In the fifth ground of the motion complaint is made that the court erred in charging the jury as follows: "It was the duty of the defendant to furnish a reasonably safe place for this man to work. It was the right of the plaintiff to assume that the place was safe when he was directed to go to it." The objection to this charge was, that the overwhelming weight of evidence was to the effect that practically every place in the quarry was dangerous and that any one working there was liable to be injured, and it was claimed that this charge was without evidence to support it. As an abstract proposition of law the charge was correct, and we do not think that, in the present case, it was calculated to mislead the jury. There is evidence in the record of the dangers that necessarily attend the working of a quarry, ordinary and usual in their nature; and the jury doubtless clearly understood, by the charge with reference to a reasonably safe place for a man to work, that it meant such a place under the circumstances and conditions attending the operation of that business. There is testimony in behalf of plaintiff tending to establish the fact that when injured he was not in a safe place. He testified that on the day

before, when engaged at work there, and when the work of re-
moving rock above them began, plaintiff and others were or-
dered away from that place on account of this danger, and that
he knew nothing about what was going on above him when he
was hurt; and we fail to find any evidence that Elliot knew he
was beneath him. We think, therefore, that this charge was
warranted by the evidence.

6. In the 9th, 10th, and 11th grounds of the motion com-
plaint is made of the refusal of the court to give certain writ-
ten requests in charge, touching what powers a municipal cor-
poration can exercise, and any powers exercised over and be-
yond those granted the corporation are ultra vires; that if the
jury believed the City Council of Augusta had no authority
from the legislature, express or implied, or indispensable to the
objects of the corporation, to conduct the quarry described in
plaintiff's petition, such work would be known in law as ultra
vires, that is, beyond the scope and powers of the corporation;
and to create liability on the city in a case of this kind, it is
necessary that the act done which is injurious to others be
within the scope of the corporate powers as prescribed by char-
ter or positive enactment; in other words, it must not be ultra
vires. We do not think there was any error in refusing these
requests. In the first place in its answer the defendant set up
nothing by way of defense charging that the city was in the
exercise of ultra vires powers in the operation of this quarry,
either by affirmative statement or by denial of any of the alle-
gations in plaintiff's petition, except that in the second para-
graph of its answer it simply states it does not admit that such
work was within the scope of its duty or authority. It nowhere
alleges that it was ultra vires, and, even if it did, it should
have shown by its plea the reasons why the city was acting out-
side of its authority, and that therefore it was not responsible
for the negligence of its agents in pursuit of this particular
business. Besides, we think this question is controlled by the
agreed statement of facts in the brief of evidence, from which
it appears that it was agreed by the parties that the tract of
land where this accident occurred belonged to the Augusta Canal
Company, and the right to quarry the same was conveyed to
the City Council of Augusta under the provisions of the act of

1849, and the city has police jurisdiction over the tract. It is admitted that this tract comes within the provisions of the act. Under the act approved December 27, 1845 (Acts of 1845, p. 138 et seq.), of which the court will take judical cognizance, the Augusta Canal Company was incorporated by the legislature. By the act approved February 7, 1854 (Acts of 1853–4, p. 252), which amends the act of 1849, it is provided : " That the City Council of Augusta may, at any time hereafter, by purchase or otherwise, lawfully acquire and enjoy all the estate, privileges, and franchises heretofore granted to the Augusta Canal Company," etc. From this it will be seen that there has been full legislative sanction given to the City Council of Augusta to own and operate the quarry in question, and therefore, in its operation, it can not be guilty of any ultra vires acts.

7. In the 12th ground of the motion complaint is made that the court failed to charge the jury as follows : " There are two general characters of duties imposed on cities; one public or governmental, and the other private or corporate. In the performance of the public or governmental duties the city is not liable for the negligence of its agents, officers, or employees. In the performance of its private or corporate duties it is subject to the same liability as are private corporations. If, therefore, you believe from the evidence that the work in which the city was engaged when petitioner Owens was injured was governmental in its nature, the city can not be held liable, whatever was the negligence of its officers or employees." We do not think the pleadings in this case involve this issue, and what we have said above on the subject of the exercise of ultra vires powers by the defendant will apply to this ground also in the motion for a new trial. There was some evidence that rock was also being gathered for the purpose of repairing the canal as well as the streets of the city. It is contended by counsel for defendant that, in the construction and maintenance of the canal, the city was engaged in performing a governmental function, and therefore it can not be liable in damages for any negligence whatever in connection therewith ; that Owens, in getting out the rock, some of which might be for use on the canal, was at work in its maintenance and construction, and therefore can not hold the city liable for its negligence.

This question is settled in general terms by our Political Code, § 748, which declares: "Municipal corporations are not liable for failure to perform, or for errors in performing, their legislative or judicial powers. For neglect to perform, or for improper or unskillful performance of their ministerial duties, they are liable." The question then in this case is, whether or not, when the City of Augusta was engaged in operating this quarry, it was exercising any legislative or judicial power, or whether it was engaged in the performance of mere ministerial duties. There can be no doubt about the proposition that if the powers it was discharging were purely and exclusively of a governmental character, the city would then occupy the position as simply the agent of the general government to do things which devolved upon the general government. There is a vast difference in the decisions of different courts upon the subject of what does or what does not constitute governmental power; but, under the evidence in this case, we think there can be no question that the operation by the city of the quarry which it owns is purely ministerial. It was held by this court in *Love* v. *Atlanta*, 95 *Ga.* 129: "The duty of keeping the streets clear of putrid and other substances offensive to the sense of smell and which tend to imperil the public health devolves, under the charter of the City of Atlanta, upon the board of health of that city; and the functions of this department of the city government being governmental and not purely administrative in their character, it follows that if, in the exercise of such functions and in the discharge of the duties devolving upon this department thereunder, a private citizen is injured by the negligence of one of its servants in and about such work, no right of action arises against the city." That case was evidently based upon the idea that the city, in performing such duties, was in the exercise of a governmental power in administering to the general public health. It was exercising a governmental function of a corporation, and was, therefore, not liable. In *Fuller* v. *Atlanta*, 66 *Ga.* 80, it was decided: "The power granted by charter to a municipal corporation to raise or alter the grades of streets involves a legislative act. After this has taken place, the mere construction of the work is ministerial." We think the decision in the *Fuller* case con-

trols the principle in this case.  Should the city decide when a street should be opened, closed or repaired, or when a sewer should be built, it is clearly exercising legislative or judicial functions, but when it engages in the work of opening, closing, or repairing a street, or building a sewer, and is thus engaged in the physical execution of the work, it is evidently in the discharge of duties purely of a ministerial nature.  If this be true, then, clearly where a city owns a quarry, and is under obligation to keep its streets, canals, etc., in repair from material obtained from quarries, it has as much right to operate its own quarry as it would have to purchase such material from others engaged in the business, and, while so operating, it is in the performance of work purely of a ministerial nature.

It is contended that the use and operation of the canal by the city was for governmental purposes; but even if there were anything in this contention, that can not affect the ministerial work of operating a quarry for the purpose of supplying rocks for the canal and streets.  Besides, the evidence fails to show for what purpose this canal was used, whether to extinguish fire, to supply citizens with water for private purposes, or to carry on manufacturing industries; and therefore there is nothing in the record to authorize the court to charge the request with reference to whether the city was exercising a governmental function in the operation of this canal.  As above stated, however, we can not see how the operation of a quarry for the purposes indicated by this evidence can constitute that enterprise anything but the exercise of a ministerial function.  It has no reference whatever to governmental powers contemplated by the statute.  There is no question in this case that the City of Augusta was working this quarry for legitimate purposes, to wit, to repair its streets, and to furnish material for repairing its canal.  Such work of repairs is certainly within the purposes and ends of the corporation.  Now, it is not pretended that the powers and duties of Joy were conferred or defined by law, either statute or common law.  He was not a public officer, but his entire powers are conferred and duties defined by the city itself.  It therefore necessarily follows that he was a mere servant or agent of the City of Augusta, and it was chargeable with the consequences of his acts within the scope of his

authority.    This principle is recognized and fully discussed in Wood's Law of Master and Servant (2d ed.), §§ 457 – 460.    A number of authorities are therein cited to sustain the text.    See Grimes *v.* Keene, 52 N. H. 335, from which the author quotes extensively, and which is controlling upon this subject.

8. In the seventh ground of the motion exception is taken to the following charge:  "He would also be entitled to recover for his decreased capacity to work, if you find from the evidence that the injury received is permanent."    The objection to this was, that there was no evidence showing how much he had been earning at the time of the trial, nor was there any evidence to show that his ability to labor had been diminished.    It invited the jury to enter upon an unilluminated field of damages, and put no rein upon the amount to be given, thus making the verdict excessive.    Upon an examination of the evidence we do not find that the position of counsel for plaintiff in error, that there was no evidence to show that plaintiff's ability to labor had been diminished, was sustained; for the plaintiff himself testified that his capacity to labor was diminished, that it pained him to work in the sun, and that while he did labor after the injury, he had to do so to support his family, but that it was attended with pain.    There was also evidence for defendant, tending to show the character of service and labor that he performed after his injury, and it seemed about as hard and difficult as it did before he was hurt.    It is true there is no evidence as to his earnings before or after the injury.    This charge we do not think authorizes the jury to have any reference to his *diminished earnings*, but it has reference only to his diminished *ability* to labor.    But there is authority for the position that such permanent diminution of one's power to labor constitutes an element of damages where it is the result of an injury sustained, though there may be no evidence that it had any effect upon the *earnings* of the injured party.    See *Powell* v. *Aug. R. Co.*, 77 *Ga.* 200, where the principle is laid down that one who has to live long in pain is more damaged than one who has to endure suffering but for a brief term.    With reference to damages from pain, we quote the following from the opinion in that case:  "It may be thought that the loss of ability to labor is not pain, but this is a mistake.    There is no greater

blessing of life than ability to labor, even though the proceeds may belong to another. It is better for happiness, as well as for virtue, to work for nothing than to be idle. A physical injury that destroys the power of a human being to labor is one of the most serious injuries that it is possible to inflict. True, it is not to be measured by pecuniary earnings where the suit is by a married woman, for such earnings, as a general rule, belong to the husband, and the right of action for their loss is in him; but the wife herself has such an interest in her working capacity as that she can recover something for its destruction," etc. We do not see why this same principle would not apply to one whose capacity to labor has been diminished, and especially when such labor is attended with pain. We can not, therefore, say that there was error in this charge which would necessitate a new trial, for both the petition and some of the evidence tend to show this effect of the injury received by plaintiff. As this was a question for the jury, we express no opinion thereon.

9. In the eighth ground of exception, however, complaint is made that the court erred in charging as follows: "So, gentlemen of the jury, if you find, under the evidence and the charge, that the plaintiff is entitled to recover, you determine what amount you will allow for the pain and suffering endured by the plaintiff. Then the amount of incapacity to work. Take into consideration, in determining that, what he has been making, and what he would likely have continued to make,— whether there would have been any increase in his earning capacity if this injury had not occurred; and also, as he grew older, what the natural decrease would be; and say how much that was affected by this injury, and then allow what you believe would compensate him for that loss." The objection to this was that it was without evidence to support it; that it encouraged the jury to enlarge its verdict beyond what was proper and justified by the evidence; that it suggested for them a measure of damages without there being any data on which to base it. We think the objection is well taken. While the petition alleges a diminished capacity to labor, it does not allege any pecuniary loss resulting to the plaintiff in consequence of the fact of diminished earnings from labor. It

does not allege what he was making before the injury, nor what he has been able to make since, and there is not a particle of evidence in the record which throws any light whatever upon the subject. The error consists, therefore, in opening up to the jury the right to investigate a matter with the view of increasing damages, by suggesting a measure of damages upon which they have no data whatever to base any finding. The verdict was for $2,000. We express no opinion whatever about its excessiveness even in view of the pleadings and evidence; but we can not say, as matter of law, that the jury would have found that amount, regardless of this charge, for pain and suffering alone. We are aware of decisions repeatedly made by this and other courts, that a new trial will not be granted by a reviewing court for error in a charge which works no injury to the complaining party. But it must be perfectly clear that a correction of the error would not result in a change of the verdict. Where the error might have influenced the jury, a new trial should be granted. We can not say that this was not a close case upon its facts, and, therefore, can not say that the jury could not have been influenced by this erroneous charge. In *Bazemore* v. *Davis*, 48 *Ga.* 339, it was decided: "Material error having been committed by the court, a new trial will only be refused where the evidence demanded the verdict which was rendered." A number of decisions of this court could be cited sustaining the same principle, but this is unnecessary. In *Furr* v. *Eddleman*, 80 *Ga.* 661 (2), it was decided: "Though an improper measure of damages be given in charge to the jury, if the verdict be for less than the damages, measured properly, would amount to, the finding need not be disturbed." But the damages involved in this case were necessarily, under the proof submitted to the jury, of a general nature, and can not be accurately measured by the court upon any legal basis whatever. It is left almost entirely in the discretion of the jury to fix the amount of damages for pain and suffering, and their finding will not be interfered with unless so excessive as to clearly indicate bias or prejudice. We therefore, as matter of law, can not say that the evidence in this case demanded a verdict for the amount found. For the erroneous charge hereinabove quoted, we feel constrained to grant a new trial.

10. The above covers all the questions of importance made by this record. There are a few other grounds in the motion for a new trial, relating principally to requests to charge; but, after comparing them with the charge of the court actually given, we do not think they are of sufficient merit to require discussion. The charge as a whole, except as specified in the note just preceding, was full and fair, and covered all the important issues between the parties; and, only on account of the error in the charge hereinabove pointed out, the judgment denying a new trial is reversed.

*Judgment reversed. All the Justices concurring.*