The **GREYHOUND CORPORATION**,
Appellant,

v.

**Mrs. Frances J. AULT, Appellee.**

No. 15968.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Cubbedge Snow, Macon, Ga., Martin, Snow & Grant, Macon, Ga., of counsel, for appellant.

David L. Mincey, E. B. Gostin, Macon, Ga., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

### HUTCHESON, Chief Judge.

The suit was for damages to plaintiff-appellee, resulting from a fall in defendant's bus, in which she and two other ladies were the only passengers, and as to which they and the bus driver were the only witnesses.

Plaintiff's claim was that her fall and injuries were the proximate result of the failures[1] of defendant and its driver to exercise extraordinary care and diligence for her protection and safety.

The defendant, denying plaintiff's claim that it was negligent, alleged that if plaintiff received injuries they were the result of her failure to exercise ordinary care and diligence for her own safety.

On the issues of negligence thus joined, the case was tried to a jury on the testimony[2] of the bus driver and the three

[1] These, as set out by her in her complaint, were:
 (a) in driving a public bus down Houston Avenue, without being familiar with said street, and at a speed that required a sudden decrease in speed or stopping of said bus;
 (b) in permitting a driver unfamiliar with the bus route to drive passengers for hire;
 (c) in not gradually reducing said bus's speed while petitioner was standing;
 (d) in bringing said bus to a sudden and violent stop as herein alleged;
 (e) in causing the bus to stop suddenly and abruptly without warning after knowing that petitioner was standing and had not had time to seat herself again;
 (f) in driving the bus in such a manner as to cause petitioner to be thrown violently and abruptly onto the floor of the bus while riding thereon;
 (g) in failing to warn petitioner of his intention to stop suddenly and abruptly.

[2] Taking this and all inferences from it most favorably to the verdict, it may be summarized as follows:
 The appellee, her employee, Mrs. Johnson, and Mrs. Hogue, all returning from a florist convention, were the sole passengers on appellant's bus from Cordele to Macon, Georgia, on the evening of November 10, 1953.
 Plaintiff and her employee resided close to Houston Avenue in the southern section of Macon, through which the bus would travel before reaching the terminal in downtown Macon. Wishing to avoid a trip into town and wanting to be discharged at a point as close to their homes as possible, plaintiff requested the driver to come into Macon by way of Houston Avenue instead of by the East Side Highway, the regular route. It was night time, and the driver acceded to the request.
 While the bus was traveling on Houston Avenue and was nearing Mrs. Johnson's home, the plaintiff arose from her seat and, going up to the bus driver, requested him to stop the bus at Bedingfield Place or Bruce School. He agreed to do this, and on her way back to her seat there was a sudden slowing down of the bus and she was thrown to the floor.
 The bus driver had been driving a bus for appellant since 1948, and prior to

passengers, and there was a verdict and judgment for $7500.

Specifying seven errors,[3] the most argued of which is the failure to instruct a verdict, appellant presses upon us that, upon the undisputed evidence, no case was made out against it and a verdict should have been directed, and, in the

that time he had driven a bus for the Georgia Power Company on a route which included Houston Avenue.

The driver's was the only testimony as to the speed at which he was driving. He testified that at the time he was talking to the ladies about coming up Houston Avenue instead of the East Side Highway, he had been driving 45 to 50 miles per hour. He testified, however, and no one contradicted him, that after he passed Seven Bridges at no time did he get over 35 or 40 miles per hour, and that when plaintiff got out of her seat to talk to him he was going about 30 miles per hour.

The plaintiff testified that she felt perfectly safe in getting up out of her seat and going to the front to speak to the driver, while Mrs. Hogue did testify that "he was making pretty good speed and when he stopped it almost threw me out of my seat", but she explained that she was merely thrown forward and was not hurt.

As the driver approached Bruce School he saw an approaching car and both drivers, as required by statute, dimmed their lights. Houston Avenue is thirty feet wide, the approaching automobile was on its right side of the street, traveling in a normal manner, and the bus was likewise on its side of the street. When about 50 feet from the bus, the car suddenly made a left turn into the bus's lane of traffic, and the bus driver immediately applied his brakes so as not to hit the car head on. Mrs. Ault, who was standing, was thrown to the floor. As the car passed, the bus driver then saw that a barricade guarding a ditch or trench across the left half of the pavement was the cause of the car's sudden turn into his path.

The bus driver testified that he was watching the road in front of him. Mrs. Ault and Mrs. Johnson did not know whether he was or not, but Mrs. Hogue testified, "Oh, he was looking at the road definitely." None of the ladies noticed the barricade, but Mrs. Johnson testified, "Well, I don't know of anything except he slowed down for that little ditch thing there in the road at Bruce's School."

The driver testified that there were no lights on the barricade and that he did not know it was there. The engineer of Bibb Company testified that a ditch had been cut and was extending across the pavement of Houston Avenue in the vicinity of Bruce School at and a little while before this time.

The three ladies gave this testimony:

Mrs. Ault: "I say he was driving at the reasonable moderate speed. I was not afraid to get up and go talk to him."

Mrs. Johnson: "No, I did not think he was driving at no high speed."

Mrs. Hogue: that at the time Mrs. Ault fell, the driver said "he had to slow down to keep from hitting it"; that he was making pretty good speed and when he stopped she was thrown forward and most out of her seat.

In answer to the driver's inquiry as to whether she was hurt and his statement that if she was hurt he must take her name and make a report, plaintiff stated that she was not.

Mrs. Hogue testified that when the bus come to the plaintiff's stop, she and the driver helped Mrs. Ault off the bus and she stayed with Mrs. Ault because she thought she was hurt and she ought to have someone with her, and that she told the driver that plaintiff was worse hurt than she thought she was.

The plaintiff testified that she was hurt but that she had said she was not hurt because she was anxious to get to her home and did not want to be taken to a hospital. As a matter of fact she was not taken to her home. Mrs. Hogue stopped a passing car, and they took her to a hospital.

3. (1) And the most argued, is the failure to direct a verdict on the ground that the evidence conclusively shows that the driver was not negligent in any respect;

(2) The submission to the jury of the question of decrease in earning capacity as an element of special damage, there being no evidence as to loss of earnings, none as to appellee's earnings after the accident and none as to her earnings in her then occupation before it;

(3) The highly prejudicial argument, over defendant's objection, and without reprimand or precautionary instructions to the jury, that the bus driver, in violation of Sec. 68–308, Georgia Code, had failed to render adequate assistance to the plaintiff when injured, to inquire adequately as to her injuries and to

alternative, the judgment should be reversed for prejudicial procedural errors.

 Appellant concedes that in Georgia, as in other states, all carriers of passengers, though not insurers, must exercise extraordinary care and diligence for the safety of their passengers, and that the Georgia statutes provide that proof of injury is "prima facie evidence of want of reasonable skill and care" on the part of motor carriers. Sec. 68–710, Georgia Code Annotated.

Urging upon us, however, that there is no evidence contradicting the bus driver's version of the occurrence, except upon the question whether at the time of the slowing up Mrs. Ault had taken her seat, as the driver said was the case, or was still standing, as the three passengers said she was, and that this conflict is without bearing upon the question of the driver's negligence, appellant insists that there is no evidence whatever of negligence on its part. It argues, in short, that if because of the sudden action of the other car, and no one disputes this, it became necessary for the driver to stop the car suddenly to avoid a collision, he cannot be blamed for stopping the bus rather than, merely because Mrs. Ault was standing, refusing to stop it and going on into collision with the coming car.

 We agree with the appellant that the driver's testimony as to the speed at which he was going and as to what caused the accident, is uncontradicted. It does not follow, though, that this testimony made out a case which, as matter of law, required an instructed verdict for defendant. The question of the speed at which the driver was going is not determinative of the issue. The question after all, under the testimony as a whole, is whether since the plaintiff, a lady, had risen and was walking in the aisle, the driver should not have slowed the bus down sooner and more gradually until she got safely back to her seat.

Certainly the plaintiff took some risk of being found negligent, in respect of which she would be chargeable, in unnecessarily and voluntarily getting up and going forward to talk to the driver, although the distance was small, only a few seats. The driver, too, took the risk of being found negligent for not doing so, when, seeing her rise to come forward, he neither required her to resume her seat nor slowed down to protect her against any necessary sudden swerving or sudden stopping which might cause her injury.

But these facts, that the plaintiff was in the aisle and that, according to the uncontradicted version of the cause of the fall, the driver was confronted with a sudden emergency, made it of the greatest importance that the law of the case should be correctly charged and that no improper or extraneous matter be allowed to come into it.

 With this in mind, we take up the procedural errors charged to deal first with the complaint of the failure to give in charge to the jury defendant's special charges four and five. Examining that complaint in the light of the general charge, we are of the opinion that the court, in its general charge, dealt fully and correctly with the obligations of care imposed upon passengers and driver, indeed he drew a large part of his charge from defendant's requested charges, including four and five, and that there is no basis for contending that there was prejudicial error in refusing these charges.

The matter stands differently, however, as to appellant's complaints: (1) that it was error to submit to the jury the issue of special damages; and (2) that there was serious and prejudicial error in permitting the argument of the plaintiff, in substance, "You ought to find a verdict against the bus company because they put Mrs. Ault off the bus at a dark corner without giving her proper

render prompt first aid or emergency assistance;

(4) and (5) The refusal of special charges four and five;

(6) and (7) Evidentiary rulings.

attention and finding out that she was more seriously injured", to go unchecked and unrebuked.

■ In support of its objection to the submission to the jury of the loss of plaintiff's earning capacity, on the ground that there was no evidence justifying the submission of the special damage issue, and further that the charge in effect allowed the jury to give double damages for diminished earning capacity, appellant cites many cases from Georgia,[4] including one decided by this court, Sinclair Refining Co. v. Tompkins, 117 F.2d 596, 598. Pointing to the entire lack of evidence that plaintiff's earnings had been in anywise diminished, it urges upon us that in submitting this issue, the court committed serious and prejudicial error.

In Sinclair Refining Co. v. Tompkins, supra, this court, speaking through Judge Sibley, disapproving the submission of special damages, said this:

"It was proven that the plaintiff was unable to leave the house for some five months to look after her dairy and farm as she had done, and at the time of trial was only keeping the books. But it appeared that her business did not stop, but went right on. She did not say she suffered any monetary loss, or that her lost time was worth anything. There was no evidence on which the jury could estimate her pecuniary loss, if any. In this connection loss of time means loss of earnings."

■ On the issue of prejudicial argument, we think it equally clear that there was error in permitting the argument to go on without reprimand or precautionary instruction to the jury, and we think this is made to stand out more clearly by the position taken and the arguments made by appellee in her brief in support of that position, that Sec. 68–308, Georgia Code Annotated, the Georgia hit and run statute,[5] applies in this case and that she was entitled to so tell the jury.

As pointed out in the two authorities she cites, Battle v. Kilcrease, 54 Ga.App. 808, 189 S.E. 573 and Hunter v. State, 65 Ga.App. 766, 16 S.E.2d 500, a violation of this statute carries with it in a civil suit for damages a moral odium which characterizes the person charged with it almost as an aggressor and authorizes the infliction of punitive damages upon him. The statute by its terms applies to, and only to, persons who strike and injure persons or property and then run away. It has no application whatever to this case. No contention was made, indeed none could be, either in the pleadings or proof that what happened here was a hit and run accident under the statute. On the contrary, it is admitted that the driver carried plaintiff on to, and put her off at, the place where she wanted to stop. He offered to take her name and report her injury if she had any, and she declared she had none. In the argument to the jury, the plaintiff's counsel stated, "I'll show you another ground of negligence on the part of the bus company. They put her off on a dark corner at night, knowing that she was hurt. They put her out in the middle of the street.", to which the defendant objected, that it was highly improper

4. Atlanta & W. P. Railroad Co. v. Haralson, 133 Ga. 231, 65 S.E. 437; City Council of Augusta v. Owens, 111 Ga. 464(9), 36 S.E. 830; City of Atlanta v. Jolly, 39 Ga.App. 282, 146 S.E. 770; Berry v. Jowers, 59 Ga.App. 24(5), 200 S.E. 195; Nipper v. Collins, 90 Ga.App. 827, 84 S.E.2d 497.

5. Georgia Code Annotated (as of 1953) Sec. 68–308
 (Georgia Laws 1927, p. 238)
 "Accident; duty to stop and give name, etc.—In case of accident to any person or damage to any property upon the public street or highway, due to the operation of a motor vehicle, tractor, or trailer thereon, the operator of such machine shall immediately stop, and, upon request of the person injured or sustaining damage thereby, or of any other person present, give such person his name and address, and if he is not the owner of such vehicle, then in addition the name and address of the owner thereof, and further he shall render such assistance as may be reasonable or necessary."

as not based on any allegation of negligence in the suit. Whereupon plaintiff's counsel replied, "Let him answer that when he gets his time to argue. I think I have a right to argue." And the court said, "Go ahead with the argument."

For the errors above noted, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.