## ST. LOUIS & S. F. R. CO. v. HURLEY.

No. 1198. Opinion Filed November 18, 1911.

(120 Pac. 568.)

1. RAILROADS — Operation — Injury to Licensee — Dangerous Approach—Negligence—Contributory Negligence. In an action for personal injuries caused by driving a wagon over a dangerous approach to a freight car, the car having been placed on the track by the railroad company to be loaded for shipment, the question of negligence in failing to provide ordinarily safe approaches, the question of contributory negligence, and question as to what constitutes a reasonably safe approach, are all questions of fact to be determined by the jury from the evidence and from the surrounding circumstances and conditions.

2. NEW TRIAL—Newly Discovered Evidence. In an action for damages sustained from personal injuries, wherein judgment is rendered in favored of the injured party, and wherein the amount of damages is based upon the extent of the injuries, and where the only testimony as to the extent of the injuries is that of the injured party, and after the conclusion of the trial new evidence is discovered, the existence of which clearly appears to have been unknown to movant before the trial, and such evidence, if true, conclusively tends to show that the injuries were not serious and that such judgment had been procured by deception and false testimony, held, it was error to refuse a new trial.

(Syllabus by Harrison, C.)

*Error from District Court, Tillman County; J. T. Johnson, Judge.*

Action by J. S. Hurley against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

On November, 1906, J. S. Hurley, plaintiff below, hauled a wagon load of cotton seed for the purpose of shipment over defendant company's road, to the town of Manitou, Okla., to be loaded into a car preparatory to shipment. The car into which

the cotton seed was to be loaded was placed by the company on the track near a cotton platform. The approach to the car from one direction was down an embankment. The road winding spirally around the embankment was somewhat steep and sidling. The plaintiff attempted to drive to the car down this approach. In making the turn around down the embankment to reach the car, the wagon turned over against the car, fastening the plaintiff's leg between the wagon and car, thereby causing the injuries complained of. In January, 1908, something over two years thereafter, he brought suit against the railroad company for damages in the sum of $1,875 because of the injuries received, and the further sum of $107 for medicine and medical attendance. Thereafter, on November 12, 1908, issues having been joined, the cause was tried to a jury, resulting in a verdict of $1,500 in favor of plaintiff, upon which verdict judgment was rendered. The defendant below filed motion for a new trial, assigning eleven different grounds for same, among which was that of newly discovered evidence. In support of this motion is attached the affidavits of W. C. Stevens and W. M. Caudill, showing the nature and character of the newly discovered evidence, the manner of the discovery thereof, the names of the witnesses, and the materiality of their testimony, and what their testimony would be and what diligence had been used in discovering such evidence. The affidavits of the newly discovered witnesses, Drs. Comp and Hays, showing substantially what their testimony would have been had they been called as witnesses in the trial of said cause, is also attached to the motion. Motion, being overruled by the court, defendant below appeals the cause here for review, complaining of nine different assignments of error. These nine assignments, however, are treated under five general heads in plaintiff in error's brief: First, the error of the court in refusing defendant's requested instruction 5. The second head is discussed in connection with the first in plaintiff in error's argument. Third, irregularity and misconduct of plaintiff and his counsel which materially prevented defendant from having a fair and impartial trial. Fourth, motion for new trial on the ground of

newly discovered evidence. Fifth, the verdict of the jury is excessive.

*W. F. Evans, E. T. Miller,* and *R. A. Kleinschmidt,* for plaintiff in error.

*H. P. McGuire* and *Lewis P. Mosier,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). From a careful examination of the record and of the authorities cited in the briefs of both parties, together with numerous other authorities applicable to the facts in this case, we think there is but one assignment which demands serious consideration; that is, whether the court should have granted a new trial on the ground of newly discovered evidence.

This being an action for damages from personal injuries wherein the questions of negligence, contributory negligence, and the exercise of ordinary care, prudence, and diligence, both on the part of the defendant in providing reasonably safe approaches to defendant's cars, and on the part of the plaintiff in ascertaining the danger to which he might be exposed, are all involved, and these questions having been in this case submitted to the jury under proper instructions for determination, and from the evidence having been determined in favor of plaintiff, then the amount of damages depends upon the extent of the injuries received and the actual expense incurred by reason thereof. There was evidence for and against every material proposition involved in the action, except the question of the extent of injuries and the expense to which plaintiff had been put by reason of the injuries. The plaintiff gave the only testimony on these points. Although there were several witnesses present at the time of the accident, some of whom assisted in extricating plaintiff from between the car and wagon and all of whom saw him afterwards, no one of them gave any testimony as to the extent of the injuries, nor did any one, except the plaintiff, testify as to how much expense he had incurred in loss of time and money paid for medicine and medical attendance, and the jury therefore, in

estimating the amount of damage, were controlled by the uncontroverted, though uncorroborated, testimony of plaintiff.

Plaintiff testified that, when he went to drive into the railway to the car, the wagon turned over and broke his leg; that it also hurt his finger, causing the finger to be permanently stiff; that he was laid up by reason of these injuries something like a month or more in the house; that it was some four or five months before he could get about except on crutches; that his leg was permanently injured, being rendered weaker than the other; that there was danger in throwing sudden weight on the injured leg at present; that he lost his fall's work by reason thereof; that he paid out for medicine and medical attendance something like a hundred dollars. This is all the testimony on these points submitted at the trial.

The alleged newly discovered evidence bears directly upon these points and is in direct conflict with the testimony of plaintiff both as to the extent of his injuries and as to the amount paid out for medicine and medical attendance. The affidavit of Dr. A. J. Hays is as follows:

"The affiant, Dr. A. J. Hays, states, after being duly sworn: That he is 47 years old and resides in Frederick, Okla., and is a regular practicing physician, and that he had been regularly engaged in the practice of medicine for 17 years. That he is a graduate of Keokuk Medical College, Keokuk, Iowa. That on the 8th day of November, 1906, lived in Frederick, Okla., and that on said day he drove from Frederick to the home of J. S. Hurley, who lives seven miles from Manitou, and there he met Dr. Comp. The affiant, together with Dr. Comp, made an examination of the injury claimed to have been received by the said J. S. Hurley by the overturning of a wagon on which said Hurley was riding on November 7, 1906, and that from said examination this affiant is able to state that plaintiff's leg was not broken, and that according to affiant's best recollection it was the left leg of plaintiff that was injured, and not the right leg. That the reason affiant remembers and believes it was the left leg is that the plaintiff, J. S. Hurley, when this affiant called on him in his home on the 8th day of November, 1906, the said Hurley was lying on the bed with his head toward the north, and this affiant entered the room from a door on the south side of the room in which the said Hurley was in bed, and that it was

the leg towards this affiant when affiant made said entrance approaching the bed from the east side. The affiant further says that from such examination that he was convinced that said leg was not broken, if so we failed to detect it by said examination. The affiant further states that said Hurley had paid him for services performed in the treatment of the injury received on said 7th day of November the sum of nothing; that this affiant never at any time told any of the attorneys for the defendant or any one in its behalf the facts herein stated; and that it was only after the case had been submitted to the jury, and when the affiant had learned that said Hurley had testified that his leg was broken, feeling that an injustice had been done the defendant, he told the attorneys for the defendant of the facts above stated. [Signed] A. J. Hays, M. D."

The affidavit of Dr. G. A. Comp is as follows:

"My name is G. A. Comp. I am 33 years old, and am a practicing physician and surgeon and reside at Manitou, Okla. I am a graduate of the St. Louis College of Physicians and Surgeons. I was living at Manitou and following my profession on November 7, 1906. About four (4) o'clock the afternoon of this date, I received a call to attend John Hurley, who had been injured by having a wagon turn over on him down close to the railroad track here at Manitou. I went down to the railroad and saw Hurley was in no place to receive treatment, so had him brought to my office. I cannot say for sure whether it was his right or left leg that was injured, as I do not remember now which it was. I have forgotten. When he was brought to my office one of his ankles was swollen very badly; in fact, so bad that I was unable to tell whether or not it was broken. I never even gave him anything to put on his leg, but told him to keep applying hot applications and keep something hot on it all the time and had him taken home. The next day, November 8, 1906, Dr. Hays of Frederick, Okla., and myself went out to Hurley's home to see him. Dr. Hays drove out from Frederick, and I drove out from Manitou. I arrived there first. Dr. Hays and myself were unable to determine whether or not the leg was broken, as it was no shorter than the other and just as straight. We left him some anodyne to ease the pain and left instructions for them to keep hot applications on the leg. This was all we did. The time I saw Hurley here in my office on November 7, 1906, and when I went to see him at his home seven miles from here, the same time Dr. Hays was there, were the only times I saw him for this injury, and the only time I treated him

for same. I never at no time gave him anything to put on the leg. Dr. Hays only made the one visit to see Hurley on account of this injury, and at no time did any other physician besides myself and Dr. Hays see Hurley on account of this injury, or treat him or send him any medicine on account of this injury to one of his legs. My opinion is that Hurley's leg was not broken, and if there was a break there Dr. Hays and myself were unable to find it. I cannot say which leg it was that was injured, as it has been so long ago that I have forgotten, and I have no way of telling. [Signed] Dr. G. A. Comp."

It is very evident that the testimony of the attending physicians would have changed the result of the verdict, and equally evident that if their testimony be true the verdict should have been different. As to whether it is true is not within our province to say. That was wholly within the province of the jury, and had there been any other testimony on these points except that of plaintiff—had any of the witnesses present on the day of the accident or any witnesses who attended him and saw him while he was disabled from his injuries given any evidence on these points, though it had been in favor of plaintiff and corroborative of his testimony—we would not be disposed to disturb the verdict, notwithstanding the newly discovered evidence set out in the affidavits of the attendant physicians. But, inasmuch as he was the party most interested, inasmuch as his was the only testimony on these points, although there were other witnesses who knew the facts, other witnesses whom plaintiff knew had knowledge of the facts but were not used by him—under these circumstances, we believe that defendant upon discovering the evidence set out in the motion for a new trial, if such evidence be in fact newly discovered, should have had the benefit of whatever weight such evidence might have been given by court or jury in a new trial. There is no question as to its materiality, nor is it in the least cumulative, and, if true, it evidently should have changed the result. If the facts set forth in the affidavits of Dr. Hays and Dr. Comp be true, then the facts testified to by plaintiff were untrue, and a deception was perpetrated upon the jury.

In viewing the record as a whole, and considering the motion for a new trial in connection therewith, there is but one feature of the motion wherein the movant seems to have failed to bring himself clearly within the rule for new trial on this ground.   That is, whether defendant below exercised sufficient diligence in discovering this evidence before the conclusion of the trial.   On this proposition the authorities seem to be harmonious that in order to entitle a litigant to a new trial on the ground of newly discovered evidence, or at least to warrant a reversal for refusal to grant a new trial on this ground, it must appear that the evidence is newly discovered; that it is material to the issues in the case; that it is not cumulative; that by the exercise of due diligence it could not have been discovered before the trial; and that due diligence has been exercised to discover it. This, in substance, is the rule announced by this court and in slightly modified form is almost universally followed in all the states.   *McCants v. Thompson,* 27 Okla. 706, 115 Pac. 600; *Burns v. Vaught,* 27 Okla. 711, 113 Pac. 906; *Weirs et al. v. Treese,* 27 Okla. 774, 117 Pac. 182; *Hobbs v. Smith,* 27 Okla. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697; Graham & Waterman on New Trials, vol. 3, p. 12; 29 Cyc. p. 86, and authorities cited.

While the defendant perhaps has not placed itself strictly within the technical letter of the rule above, yet under the circumstances in this case we think the motion substantially complies therewith.   At least it shows a very plausible excuse for not having the evidence at the trial—it had no knowledge of the existence of such evidence.   It clearly appears from the evidence of W. C. Stevens, W. M. Caudill, and Dr. Hays, attached to the motion, that the evidence was in fact discovered after the trial was over.   If this be true (and it is not disputed in the record nor in the brief of defendant in error), then there could be no reason for requiring the movant to have instituted, prior to the trial, a search for something which it had no idea existed.

It is argued by counsel for defendant in error that Dr. Hays and Dr. Comp had been subpoenaed by plaintiff below, and that defendant below could have talked with these doctors concerning

their testimony and ascertained what same would be. The excuse given by defendant below for not so doing was that plaintiff had made a statement in writing to an agent of defendant, wherein he stated that his leg had been broken and that defendant had proceeded upon the truth of this statement; that plaintiff had subpoenaed the two attending physicians and defendant fully expected them to be used as witnesses for plaintiff and did not consider it proper conduct to approach them and interview them as to their testimony, and would not have done so had plaintiff· not failed to use them as witnesses.

We think this action on the part of counsel is to be commended rather than censured. The plaintiff having stated that his leg· was broken, and having subpoenaed the physicians who attended upon him for the injuries, it was reasonable for the defendant, believing in the truth of plaintiff's statement, to believe that the attending physicians would corroborate his testimony, and it was not incumbent upon counsel to anticipate a fraud being perpetrated upon the court.

We are not saying by any means that such was the case; but do say that, if the affidavits of Dr. Hays and Dr. Comp are true, then the testimony of the plaintiff is untrue, and the weight to be given·their testimony should have been determined by the jury. The plaintiff had ·these witnesses subpoenaed; he evidently knew what their testimony would be. It is reasonable to suppose that he knew from the time the physicians attended upon him for his injuries what their testimony would be, yet he subpoenaed them and withheld their testimony from the jury.

A case almost identically in point is reported in 93 Ga. 6, 19 S. E. 24, *Atlanta Consolidated Street Ry. Co. v. Beauchamp*. In this case the plaintiff below brought an action for damage resulting from a collision with a street car. He had testified that he was a sound man before the injury; that he was then disabled from work by reason of the injuries received from the collision. Judgment was rendered in his favor. His was the only testimony in reference to his soundness prior to the injury and to the extent of his injuries afterwards. After the trial evidence was

discovered tending to show that the injuries received were not so serious as plaintiff had testified, and that he was not a sound, healthy man prior to the injuries. In discussing this the Supreme Court of Georgia, speaking through Mr. Justice Lumpkin, says:

"The newly discovered evidence, if true, shows clearly that he had, before this time, been severely afflicted with rheumatism, and also received a gunshot wound which permanently disabled his right arm. It also tends to show that the injuries the plaintiff received at the hands of the defendant were by no means so serious as plaintiff at the trial testified. We therefore feel constrained to order a new trial. It is certainly probable, if not absolutely certain, that in estimating the amount of damages to be awarded, the jury compared the physical condition of the plaintiff at the trial with that of a man in good health, with sound and vigorous limbs unimpaired by disease or injuries of any kind, under the belief that plaintiff was such a man before he received the injuries sued for. Acting upon this belief, they doubtless allowed him a larger amount than they would have done had the evidence brought to light by the newly discovered evidence been before them. Good faith and fair dealing forbade the plaintiff from withholding and concealing these facts from the jury. Under the circumstances stated, common honesty required a disclosure of the facts for their consideration. He had no right to pose before them as a man who, formerly having a strong constitution, perfect health, and sound limbs, had been by the defendant made a physical wreck, and thus obtained a recovery of an amount much larger than he was entitled to receive. We do not by any means intimate that every plaintiff is, at all times and under all circumstances, under the obligation to disclose facts which would injure his case; but, in the case before us, the conduct of plaintiff amounted to a tacit assertion, equivalent almost to actual swearing that he was a sound man until injured by the defendant. He was sworn as a witness on his own behalf and his oath required him to tell 'the truth, the whole truth, and nothing but the truth.' We do not think he complied with its terms. His deliberate suppression of most material facts, if not altogether as bad as actual falsehood, certainly was hardly less injurious to the defendant than if he had made false statements as to his previous physical condition. Some of the facts which appear from the newly discovered evidence might, by the exercise of proper diligence, have been discovered before the trial; but there was no want of dili-

St. Louis & S. F. R. Co. v. Hurley.

gence on the part of defendant or its counsel in failing to sooner ascertain many of the material facts to which reference has been made above."

In somewhat similar cases the same rule is followed in *First National Bank of Shenandoah v. W. St. L. & P. Ry. Co. et al.,* 61 Iowa, 700, 17 N. W. 48; also, *Stackpole et al. v. Perkins,* 85 Me. 298, 27 Atl. 160.

The points wherein the above authorities are not identical with the case at bar lie in the fact that they are less positive cases than this. This case presents a stronger condition of circumstances in favor of granting a new trial than is found in the authorities quoted above, and, while adhering to and heartily approving the general doctrine that the granting of new trials on the ground of newly discovered evidence should be discouraged, yet under all the circumstances in this case, in view of the fact that plaintiff was the only witness who testified as to the extent of the injuries received, and of the fact that he knew what the testimony of the attending physicians would be, had had them subpoenaed, and withheld their testimony from the jury, and in view of the further fact that such evidence was unknown to defendant and was not discovered by it until after the trial, we are constrained to believe that a new trial should have been granted.

The judgment of the court below is reversed, and the cause remanded.

By the Court: It is so ordered.

All the Justices concur.