### McKONE et al. v. McCONKEY.

No. 12723—Opinion Filed May 1, 1923.

Rehearing Denied July 24, 1923.

(Syllabus.)

1. **Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

In a case of equitable cognizance, the judgment of the trial court will be sustained unless it appears that same is clearly against the weight of the evidence.

2. **Contracts—Persons of Unsound Mind—Rescission—Conditions.**

Where the rights of third parties are not affected, a conveyance or contract of a person of unsound mind is subject to rescission, but in such case there must be a tender back of the amount of the benefits received by the person of unsound mind before a rescission will be ordered by a court of equity.

3. **Appeal and Error—Mortgage Foreclosure—Affirmance.**

The judgment of the trial court is not clearly against the weight of the evidence, and should be affirmed.

4. **New Trial—Newly Discovered Evidence—Requisite Showing.**

Before a new trial will be granted on the ground of newly discovered evidence, it must appear that such evidence is material to the issues in the case, is not cumulative, that by exercise of due diligence it could not have been discovered before the trial, and that due diligence has been exercised to discover it.

Error from District Court, Kingfisher County; J. C. Robberts, Judge.

Action by Robert McConkey against Roger McKone and others on note and to foreclose mortgage. Judgment for plaintiff, and de-

fendants bring error. Affirmed.

West & Petry, for plaintiffs in error.

Simons, McKnight & Simons, for defendant in error.

COCHRAN, J. This action was commenced by defendant in error against plaintiffs in error Roger McKone and Isabella A. McKone to .recover judgment on a promissory note for $3,000 and interest, and to foreclose a real estate mortgage given on lands of the plaintiffs in error to secure the payment of the note. The parties will hereinafter be referred to as plaintiff and defendants as they appeared in the trial court.

The note and mortgage were executed to Belle H. King, and assigned to plaintiff for a valuable consideration, and before maturity. The case was originally filed June 11, 1915, and has been before this court on appeal once before, the decision being reported in 77 Okla. 3, 185 Pac. 520, where the judgment of the trial court was reversed because of error · committed in sustaining a demurrer to defendants' testimony. The defendants allege that at the time of the execution of the note and mortgage, Roger McKone was of unsound mind and entirely without understanding. Defendants also allege that they did not receive all of the money represented by the note and mortgage. On the issue of the mental incapacity of Roger McKone, the court found as follows:

"That the notes and mortgage sued on in this case were duly executed and delivered by the said defendants, Isabella A. McKone and Roger McKone, on the 5th day of June, 1913, for a valuable consideration; and that thereafter the said notes were indorsed over and said mortgage assigned to R. S. McConkey, plaintiff herein, for a valuable consideration. That on said 5th day of June, 1913, when said notes and mortgage were executed and delivered as aforesaid, the said Roger McKone, defendant, may have been of unsound mind, but was not entirely without understanding, and was capable of contracting; that he was not adjudged insane by said commissioners of insanity until subsequent to said last mentioned date; that he, the said Roger McKone, received a substantial benefit by reason of the money obtained by defendant upon the notes and mortgage sued on herein; that the plaintiff, upon due consideration of all of the evidence in this case, and of all the facts and circumstances surrounding this transaction, ought not to recover the full amount of the notes sued on with 10 per cent. interest thereon; but the court does find that the said plaintiff ought to recover the sum of thirty-two hundred ($3,200.00) dollars in full as principal and interest on said notes and mortgage and for money paid out by plaintiff and in his behalf, and the further sum of one hundred dollars ($100.00) as his attorney's fee· herein."

The defendants contend that at the time the note and mortgage were executed, Roger McKone was entirely without understanding and is controlled by section 888, Rev. Laws 1910, which provides:

"A person entirely without understanding has no power to make a contract of any kind, but is liable for the reasonable value of things furnished to him necessary· to his support on the support of his family."

The defendants insist that, this being an equity proceeding, this court should review the entire evidence, and that an examination thereof will reveal that the finding of the trial court is clearly against the weight of the evidence. Numerous witnesses testified that in their opinion Roger McKone was insane at the time of the execution of the note and mortgage. The opinion of these witnesses, however, was based largely upon events transpiring after the 5th day of June, 1913, on down to the time of his death. The principal incident related by some of these witnesses as tending to show his insanity prior to the 5th day of June, 1913, happened some few days before, the adjudication, when he exhibited a lemon on the streets of Kingfisher and stated that it was a pumpkin, such as he was growing on his farm, and that he was going to make a great deal of money out of growing the same. This particular incident was explained by the witness Cunningham, who stated that McKone told him about this matter, and said that he had bought a couple of lemons down in town and that one of them was rather peculiar in appearance so that it was difficult for an ordinary person to know that it was a lemon, and, upon inquiry being made by several persons as to what it was, he told them that it was a pumpkin, such as he was growing down on his farm; that he had the lemon with him in a barber shop and told the negro boy in the shop to cut it open, and that if he did it would explode, and the negro refused to have anything to do with it. He said, further, that he had not come across anyone on the street who could tell him what the lemon was. This explanation of this incident was corroborated by testimony of several witnesses appearing for the defendants, who testified in regard to this pumpkin incident, and some of them insisted that the object which McKone had at the time and which he insisted was a pumpkin was a small gourd; that it might have been a lemon, but they took it for a small gourd. The testimony in connection with the mental condition of Roger McKone prior

to June 5, 1913, with the exception of this incident, consists principally of mistreatment of his wife and threats made against her and other acts of abuse which could be as easily attributed to his ungovernable temper aided by the drinking of a considerable amount of whisky, as it could to insanity. It appears that McKone and his wife separated in 1904 or 1905, and did not live together from that time until in September, 1913. At the time the note and mortgage were executed they were both living in Kingfisher, but were not living together. On the same day the note and mortgage were executed, McKone exhibited signs of not being in his normal mind and was arrested and kept in jail during the night, but was released the next day. Within the next day or two he exhibited further signs of insanity and was arrested again and placed under observation in jail for several days and was thereafter adjudged insane and sent to the asylum for the insane. For some days prior to the time he completed arrangements for getting the money on the mortgage, he had been worrying considerably because the property was being advertised for sale under execution and was to be sold within a few days, and after the instruments were executed and delivered he commenced to drink heavily, and before his first arrest he had consumed a considerable part of a gallon jug of whisky. There was considerable doubt in the minds of the insanity board at that time as to what his real condition was. It appears from the testimony of one of the members of the insanity board that at the time of his examination, which was about the 7th of June, 1913, McKone was able to answer all questions relative to his family history to such an extent that they did not have to look elsewhere for any of this information. After he was sent to the asylum, he remained there under observation until some time in September of the same year, when he was released and returned home, and he and his wife then lived together from that time until June, 1915, when he was again sent to the asylum, and after that he was released several times and remained at home for short intervals until the time of his death. The trial court evidently relied largely upon the testimony of Dr. Nowell, who testified that in his opinion McKone was of sound mind on the 5th day of June, 1913, and gave very satisfactory reasons for his opinion.

We are of the opinion that the finding of the trial court is not clearly against the weight of the testimony, and such being the case, section 888, Rev. Laws 1910, is not applicable; but the applicable provision of the statute is section 889, Rev. Laws 1910, which is as follows:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the article on extinction of contracts"

—and section 1150, Rev. Laws 1910, which provides:

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make and execute the same, except on the ground of fraud, but this section shall not apply to minors or persons of unsound mind who pay or tender back the amount of such benefit received by themselves."

While it appears from the record that the plaintiff was an innocent purchaser before maturity of the note and mortgage, yet the trial court evidently awarded judgment according to the amount of benefit which he found had been received by the defendants, as though the rights of a third person were not involved, and the plaintiff is not complaining of that award. The note sued on was for the principal sum of $3,000, bearing interest from June, 1913, but the trial court only allowed $1,715 at 10 per cent. from June 5, 1913, and it seems clear to us that the defendant received the full benefit of that amount. The land belonging to defendants was incumbered by several mortgages and a judgment, and a sale was about to be made under execution. The defendants had been unable to procure the money to take up these mortgages and the judgment, and King agreed to assist in procuring the money, agreeing to procure for the defendant a loan of $7,000, and that in consideration therefor notes and mortgage amounting to $9,000 were to be executed, King agreeing that he would pay all commission and expense. In other words, $2,000 of the notes and mortgage executed by the defendant would represent expense, commission, and amount paid to King for his services. King finally procured for them a loan of $5,400 from one Knebel; but, in procuring the same, he had to pay a commission to Knebel of $600. In order to make the entire amount of the loan which he had agreed to procure for defendants, King procured from his wife, out of her private funds, approximately $1,600, and in addition to this, paid other expenses sufficient to bring the total amount paid out by him to $1,715. The defendants

contend, however, that under the contract the expense and commission of $600 should not be allowed, because they were to have been paid by King under the contract, but this contention is not sound, because defendants are seeking to avoid the terms of the contract and to be bound only by the benefits received, and, under the uncontradicted testimony in this case, the allowance of $1,715 on this note only provides for the amount actually expended by King in procuring the loan on this property for the defendants and represents no profit whatever for himself.

The defendants also assign as error the action of the trial court in sustaining a demurrer to a petition for a new trial. This petition for a new trial alleges that Roger McKone was insane in 1884, 1888, 1894, 1895, and 1906 and at all subsequent times, and that on each of said occasions he showed a superexcited mental condition caused by worry or other outside happening followed by intense sleeplessness, insane delusions generally delusions of a pursuit of himself by someone with the intention of killing him; that these facts are like the facts that existed at the time of his arrest for insanity, and conclusively show that his insanity antedated his act of making the mortgages in this action, and that he was totally without understanding at the time he made said mortgages.

The rule announced by this court in regard to granting a new trial for newly discovered evidence is as follows:

"It appears that the evidence is newly discovered; that it is material to the issues in the case; that it is not cumulative; that by the exercise of due diligence it could not have been discovered before the trial; and that due diligence has been exercised to discover it." St. Louis & S. F. R. R. Co. v. Hurley, 30 Okla. 333, 120 Pac. 568.

Measured by this rule, the petition for a new trial did not state facts bringing the defendants within the rule and the trial court correctly sustained a demurrer to the same.

The judgment of the trial court is affirmed.

JOHNSON, C. J., and McNEILL, NICHOLSON, and MASON. JJ., concur.