Atlanta Consolidated Street Rwy. Co. *v.* Beauchamp.

1. The declaration alleging that the plaintiff's injuries had destroyed his ability to work and pursue his accustomed avocation; that his business was that of a granite and stone contractor, requiring him to be on his feet, and to exert all his physical powers in superintending, directing, helping, etc.; and that his average earnings were $150 per month, all of which were lost for all the future, there was no error in allowing him to testify as a witness what work he did individually before the injury, and that its value was $5 per day, the evidence showing that the work he did individually was done in pursuing his calling as a granite and stone contractor.

2. The plaintiff having testified that there was nothing to hinder the motorman from seeing him, and that there was nothing between the motorman and the witness and his cart, there was no error in allowing him to state he thought or supposed the motorman would stop the car, this testimony illustrating and explaining the conduct of the plaintiff in managing his horse upon the occasion under investigation.

3. A witness being asked whether or not if a certain thing mentioned in the question, had been done, she would have seen it, answered: " Well, I suppose I would." The question was not leading, nor the answer illegal.

4. Before the Carlisle mortality and annuity tables can be properly admitted in evidence to show the expectancy of the plaintiff and aid the jury in arriving at the amount of damages he should recover for a permanent injury, the foundation should be laid by proving the plaintiff's age, or introducing evidence from which his age could be inferred or approximately arrived at by the jury.

5. When it is open to question at what a horse became frightened, the witness, after stating the facts, may testify he was pretty certain the animal took fright at a particular object.

6. Upon an assignment of error alleging that " The court erred in charging the jury as follows: ' If you believe from the evidence that the motorman in charge of the car was running at a high rate

of speed,' then certain legal consequences followed as therein declared," without setting forth what those consequences were as expressed in the charge, it is impossible for this court to determine whether, if erroneous at all, the charge excepted to resulted in any injury to the party complaining of it.

7. The plaintiff's cause of action being based upon the theory that before the injuries therein complained of he was in all respects a perfectly sound and healthy man, there being nothing either in the declaration or the evidence introduced by him to suggest the contrary, and the newly discovered evidence disclosing that he had previously been severely afflicted with rheumatism, and had also received a gunshot wound which permanently disabled his right arm, and the newly discovered evidence further tending to show that the injuries inflicted by the defendant were not so serious as the plaintiff had testified, the ends of justice require a new trial. It is probable, if not certain, that in allowing the amount of damages found by the verdict, the jury acted under the belief that the plaintiff, when he received the injuries for which this action was brought, was a sound and healthy man, and consequently awarded a larger amount than they would have done had the facts disclosed by the newly discovered evidence been before them. Under all the circumstances, the plaintiff could not, consistently with good faith, withhold and conceal these facts from the jury. As to a material part of the newly discovered evidence, there was no want of diligence in failing to acquire knowledge of it before the trial.

October 30, 1893.

Action for damages.   Before Judge VAN EPPS.   City court of Atlanta.   March term, 1893.

N. J. & T. A. HAMMOND, for plaintiff in error.

ARNOLD & ARNOLD, *contra*.

LUMPKIN, Justice.

1. The plaintiff brought an action against the railway company for damages resulting from a collision between an electric car of the defendant and a vehicle he was driving. After setting forth the injuries received by the plaintiff, and the manner of their infliction, the declaration alleged as follows: "All the foregoing injuries he charges to be permanent, and will forever destroy his ability to work and pursue his accustomed avocation. His business is that of granite and stone contractor and

builder, and said occupation requires plaintiff to be on his feet, and requires him to exert all his physical powers in superintending, directing, helping, etc. His average earnings were $150.00 per month, all of which are lost for all the future." Over objection of the defendant, the plaintiff, while on the stand as a witness, was permitted to testify that he was a contractor doing building work generally, working from fifteen to twenty hands, of about half of whom he had charge, and his partner had charge of about half; that he, witness, did actual work, very often turning over stone, taking hold of anything he could; that he had to superintend the work nearly all the while; that he laid off the work for the men and they did the drilling, and after the drilling was done, he took a large hammer and broke up the stone; and that doing what he did was worth $5.00 a day. The objection to this evidence was, that the suit was brought for what the plaintiff lost as contractor, and that there was no allegation in the declaration as to the value of his individual services per day, or for any other length of time. We think the evidence was properly admitted. It tended to support the allegations of the declaration, and it seems quite clear that the work about which the plaintiff testified was done in pursuance of his calling as a granite and stone contractor.

2. In view of the fact that the electric car was approaching the plaintiff while he was upon the track with his horse and vehicle, what he did under these circumstances in managing his horse was a material matter for investigation. Having testified that there was nothing to prevent the motorman of the car from seeing him, and that there was nothing between himself and his cart and the motorman to obstruct the latter's view, there was no error in allowing the witness to add that he thought, or supposed, the motorman would stop the car. This testimony certainly threw some light upon, and

tended to illustrate and explain, the conduct of the plaintiff on this occasion.

3. During the examination of a female witness introduced in behalf of the plaintiff, she was asked: "State whether or not, if the motorman had turned off the electricity, or wound the brake, you would have seen it." She answered: "Well, I suppose I would." The question was objected to on the ground that it was leading, and the answer upon the ground that it was illegal. We do not think there is any merit in either of these objections. Counsel had a right to interrogate the witness concerning her opportunity to observe the conduct of the motorman on the occasion in question. Her answer merely states, in effect, that her position was favorable to noting any action on the part of the motorman in the respect inquired about.

4. It can hardly be doubted that before the Carlisle mortality and annuity tables can be properly admitted in evidence in a case of this kind, the foundation for so doing should be laid by proving the plaintiff's age, or at least introducing some evidence from which his age can be inferred or approximately arrived at by the jury. The trial judge recognized the correctness of the rule thus announced, and, it seems, admitted these tables upon the idea that defendant conceded that the plaintiff's age was as alleged in the declaration. Be this as it may, no trouble on this score can arise upon the next trial, so this assignment of error need not be further discussed.

5. There was no error in allowing the plaintiff to testify he was "pretty certain" his horse became scared at a piece of *terra cotta* pipe lying upon the edge of the street, it being a question whether the horse was actually frightened by this or some other object.

6. The error assigned to the charge of the court set forth in the 6th head-note was, that the expression "high

rate of speed" was susceptible of the construction "illegal rate of speed," of which there was no evidence; or, if not susceptible of that construction, it left the jury to form in their own minds an idea of what was a high and what a low rate of speed, and was therefore misleading and calculated to injure the defendant. The ground of the motion for a new trial complaining of the charge referred to is manifestly incomplete. It does not set out enough of the charge to enable this court to determine whether or not the words pointed out as objectionable were in fact erroneous, or injurious to the defendant, in the connection in which they were used. Certainly the ground ought to have disclosed what "legal consequences" the trial judge said would follow in case the jury should believe that the motorman was running his car at a "high rate of speed," in order to enable us to fully understand the nature and effect of the charge complained of. Considering merely the extract from the charge given, we are unable to say there was error.

7. Nothing whatever in the plaintiff's declaration, nor in the evidence introduced by him in support of it, in the remotest manner states or suggests that he was not, prior to the injuries alleged to have been inflicted upon him by the defendant, in all respects a sound, vigorous and healthy man. Indeed, it would have required extraordinary astuteness and vigilance to even suspect the contrary, and there is no reason to doubt that the jury tried and disposed of the case upon the theory that the plaintiff had never been seriously injured or physically affected before he received the injuries complained of in this action. The newly discovered evidence, if true, shows clearly that he had, before this time, been severely afflicted with rheumatism, and had also received a gunshot wound which permanently disabled his right arm. It also tends to show that the

injuries the plaintiff received at the hands of the defendant were by no means so serious as the plaintiff at the trial testified. We therefore feel constrained to order a new trial. It is certainly probable, if not absolutely certain, that in estimating the amount of damages to be awarded, the jury compared the physical condition of the plaintiff at the trial with that of a man in good health, with sound and vigorous limbs, unimpaired by disease or injuries of any kind, under the belief that plaintiff was such a man before he received the injuries sued for. Acting upon this belief, they doubtless allowed him a larger amount than they would have done had the facts brought to light by the newly discovered evidence been before them. Good faith and fair dealing forbade the plaintiff from withholding and concealing these facts from the jury. Under the circumstances stated, common honesty required a disclosure of the facts for their consideration. He had no right to pose before them as a man who, formerly having a strong constitution, perfect health and sound limbs, had been by the defendant made a physical wreck, and thus obtain a recovery of an amount much larger than he was really entitled to receive. We do not by any means intimate that every plaintiff is, at all times and under all circumstances, under obligation to disclose facts which would injure his case; but in the case before us, the conduct of the plaintiff amounted to a tacit assertion, equivalent almost to actual swearing, that he was a sound man until injured by the defendant. He was sworn as a witness in his own behalf, and his oath required him to tell "the truth, *the whole truth*, and nothing but the truth." We do not think he complied with its terms. His deliberate suppression of most material facts, if not altogether as bad as actual falsehood, certainly was hardly less injurious to the defendant than if he had made false statements as to his previous physical condition.

Some of the facts which appear from the newly discovered evidence might, by the exercise of proper diligence, have been discovered before the trial; but there was no want of diligence on the part of defendant or its counsel in failing to sooner ascertain many of the material facts to which reference has been made above.

We have ruled upon and discussed all the grounds of the motion for a new trial, except such as relate to certain questions which cannot arise upon the next hearing. We are satisfied that the ends of justice require a new trial in this case, and have accordingly so ordered.

*Judgment reversed.*