A94A2190. DEPARTMENT OF HUMAN RESOURCES
v. THOMAS.
(456 SE2d 724)

McMURRAY, Presiding Judge.

Plaintiff Gloria Thomas brought this action against defendant, the Georgia Department of Human Resources ("DHR"), pursuant to the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. According to the complaint, plaintiff was injured in a cafeteria at the West Central Georgia Regional Hospital. As she was "waiting to pay for her meal, Plaintiff fell, . . . due to food spilled on the floor." The complaint also alleged that employees of DHR "knew that food was spilled upon the floor [. . . whereas] Plaintiff did not know that this food was spilled on the floor." The case was tried before a jury, which found for the plaintiff. This appeal followed. *Held:*

1. In its first enumeration, DHR contends the trial court erred in failing to direct a verdict in its favor.

(a) "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be di-

rected." OCGA § 9-11-50 (a). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the 'any evidence' test. *Skelton v. Skelton*, 251 Ga. 631 (4) (308 SE2d 838) (1983)." *Southern R. Co. v. Lawson*, 256 Ga. 798, 799 (1) (353 SE2d 491).

In the case sub judice, the evidence showed that plaintiff slipped on cream of broccoli soup. This was spilled on the floor in the general "area around where [a] coffee pot . . ." stood against the wall and a few feet beyond the cash register. The hospital cafeteria is generally very crowded on Fridays, and this particular Friday was no exception. The area by the checkout is especially crowded because the line of paying customers merges with the throng of non-paying hospital patients, all waiting to get beverages. Lieutenant Otis C. Brown of the Muscogee County Sheriff's Department and Asberry Clayton stood in the serving line and observed as a hospital employee "was getting her food to take out in a tray. . . . [S]he had paid the cashier already, and she went to get her — the cup of soup right by the coffee. As she picked up the cup of soup, it slipped from her hand and fell on the floor right in front of the cash register." Lieutenant Brown told the cashier: "There's soup here on the floor, you should get someone to clean it up because someone will step in it." Asberry Clayton repeated this admonition to the cashier. Lieutenant Brown estimated that the spill was "a twelve by twelve puddle, blob." Victoria M. Allen was working the cash register. She affirmed that "[t]hree people told [her] that somebody had spilled stuff on the floor. . . ." Ms. Allen "was telling people there was soup on the floor [. . . but] didn't . . ." warn plaintiff about it. Ms. Allen also confirmed that, with regard to such cafeteria spills, she was supposed to get them cleaned "up as soon as possible [. . . and] to warn people [by putting] a little sign out [but that she did not] do any of those things."

Plaintiff stood in line "three or four people behind [Lieutenant Brown and Asberry Clayton]." She was purchasing her own "meal, plus . . . taking [a second meal back for] another employee. . . ." Plaintiff could not simultaneously carry both her tray and the "Styrofoam box . . . that was the takeout tray," so she paid for her own lunch first and "left the takeout there with Ms. Allen [at the checkout]." Telling the cashier that she "would be right back[,]" plaintiff walked with her tray to a table. She placed that tray on the table and then returned to the "general area" of the checkout, but "flush to the wall. . . ." There, she waited until the cashier "gave [her] the okay that [she] could come in and pay her and get the other tray to carry out." At that point, plaintiff "didn't have a tray in her hand. . . ." When she started to approach [the cashier], [her] feet

went to sliding and . . . at that point, that's when [plaintiff] hit the little rail . . ." and fell. From the floor, plaintiff detected that her shoes were wet. Only then did she see that wet paper towels covered "a little humplike something in . . . [a] corner . . . in front of the [black] baseboard." MaryAnn Foster, who saw plaintiff fall, previously "had come through the line and [she] didn't see anything [on the floor], [as she] went by the coffee machine[,]" on her way to the ice machine. Plaintiff was adamant that she "[n]ever [saw the spill] while she was standing up[.]" Accordingly, there is evidence authorizing the jury to conclude that "plaintiff [has shown] that the defendant had [actual][1] knowledge of the presence of the foreign substance, [and . . . that she] was without knowledge of its presence. *Sears, Roebuck & Co. v. Reid*, [132 Ga. App. 136, 138 (207 SE2d 532)]." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327). "A directed verdict ([or] judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict. OCGA § 9-11-50 (a), (b). Viewing this evidence in favor of the jury's verdict, we cannot find the evidence, with all its reasonable deductions, demanded a verdict for the defendant. . . . [Cit.]" (Emphasis in original.) *Union Camp Corp. v. Daley*, 188 Ga. App. 756 (1) (374 SE2d 329).

(b) Nevertheless, DHR argues that an alleged "conflict in Plaintiff's testimony on deposition and at trial, when construed against her, entitled defendant to a directed verdict." Specifically, DHR argues that plaintiff's "trial testimony that her tray prevented her from seeing the spill the first time contradicted her deposition testimony that there was *nothing* that would have prevented her from seeing the spill the first time she passed by it, if she had looked down." DHR would apply the rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680). DHR then argues that plaintiff is conclusively presumed to have knowledge of the hazardous substance because she walked past the area of the spill and admittedly did not look down at the floor. From this, DHR argues that plaintiff has failed to exercise ordinary care on her own behalf. See OCGA § 51-11-7.

In the case sub judice, plaintiff testified under cross-examination that she did not see the spill (and could not have seen it) when she

---

[1] In light of this actual knowledge, DHR's reliance on *Moore v. Food Assoc.*, 210 Ga. App. 780, 782 (437 SE2d 832), is misplaced. *Moore* represents, at best, a constructive knowledge situation. A complete and correct citation of that decision's rationale is: "It is not enough for the plaintiff to say that she did not see the dangerous condition and that the defendant *must have known* it was there." (Emphasis supplied.) *Moore v. Food Assoc.*, 210 Ga. App. 780, 782, supra.

first passed by the area of the coffee pot because she was looking straight ahead, "watching where [she] was going," and trying to avoid bumping into patients and others in the crowd. Plaintiff was pressed repeatedly whether there was "anything that would have prevented you from seeing the spill if you had looked down," during which plaintiff never admitted that she *should* have seen the spill while conceding that she must have passed it. The following then transpired: "[PLAINTIFF:] I had my tray. My lunch was in my hand when I made the turn [away from the cash register]. . . . I could not see the floor directly right there up under me. I paid for my tray like you would do at Morrison's, I made the turn, and I came on out. That's the best I can do. . . . I'm sorry." Thereafter, DHR sought to impeach plaintiff with her pre-trial deposition testimony, reciting that she had been asked: " 'Was there anything that would have prevented you from seeing it when you passed by?' . . . [Plaintiff answered:] 'No, because nobody was standing there.' "

"Every witness is under a solemn obligation to tell the truth, the whole truth, and nothing but the truth; and this obligation is especially binding upon one who seeks, by his own testimony, to establish a substantial right against another. *Atlanta Consolidated St. Ry. Co. v. Beauchamp*, 93 Ga. 6 (19 S.E. Rep. 24). . . . Being peculiarly in a position to state fairly and definitely the facts which [s]he professes to know, [a party, i.e., the plaintiff in the case sub judice,] is under a duty of so stating [those facts] as to give a candid and intelligible account of what occurred." *The Western &c. R. Co. v. Evans*, 96 Ga. 481, 485-486 (23 SE 494). "The rule in Georgia is that the testimony of a party who offers himself as a witness in his own behalf at trial ' "is to be construed most strongly against him when it is self-contradictory, vague or equivocal." ' [Cits.] Where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to a directed verdict. *Douglas v. Sumner*, [213 Ga. 82, 85 (3) (97 SE2d 122)]." *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1), supra.

In the case sub judice, it is our view that, plaintiff's trial testimony that the tray in her hand blocked her view of the floor is not a material self-contradiction of her pre-trial deposition that no *person* was standing in the general area of the spill. "[T]o 'contradict' [means] 'to assert the contrary.' " *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2), n. 3, supra. Plaintiff's two statements are not in irreconcilable conflict but can be viewed as complementary, in which case there is no inconsistency. See *Broomberg v. Hudgens*, 206 Ga. App. 797, 798 (2) (426 SE2d 617). See generally *Mealer v. Gen. Cinema Beverages of Ga.*, 190 Ga. App. 419, 420 (379 SE2d 192). Conversely, if plaintiff intentionally contradicted herself by making a

distinction between the tray in her hand and third persons blocking her view, this is a reasonable explanation, per *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2), 31, supra. In either event, the "credibility of [this] witness [remained] a matter to be determined by the jury under proper instructions from the court." OCGA § 24-9-80. See also *Ryder v. Schreeder*, 224 Ga. 382 (2), 386 (162 SE2d 375). The trial court did not err in failing to construe this alleged self-contradiction against the plaintiff while considering DHR's motion for directed verdict.[2] Whether plaintiff *should* have seen the spill amid the cafeteria tumult remained a question for the jury to determine, under all the facts and circumstances. " ' "(Q)uestions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." (Cit.)' " *Showalter v. Villa Prado Assoc.*, 182 Ga. App. 705 (356 SE2d 895). See also *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 96 (4) (449 SE2d 618). In the case sub judice, the fact that plaintiff had previously walked past the general area of the spill is not conclusive of her failure to exercise ordinary care to detect and avoid the hazardous foreign substance, of which DHR had actual knowledge. *Cedartown-Polk County Hosp. Auth. v. Watwood*, 195 Ga. App. 321, 322 (393 SE2d 476). The trial court did not err in denying DHR's motion for directed verdict.

2. In its second enumeration, DHR contends the trial court erred in charging the jury on loss of future earnings, arguing there is no evidence that plaintiff's capacity to earn has been permanently reduced as a result of her injuries. In reply, plaintiff points to medical opinion indicating that she has suffered a 20 percent disability rating.

"Damages allowed to a plaintiff for injury to his earning capacity are compensatory, allowing a pecuniary recovery for a diminution in the *physical ability* to work resulting from an injury to the person of the plaintiff. *Atlantic C. L. R. Co. v. Ansley*, 84 Ga. App. 89 (65 SE2d 463)." (Emphasis in original.) *Leggett v. Benton Bros. Drayage &c. Co.*, 138 Ga. App. 761, 764 (1), 765 (227 SE2d 397). " 'While proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased earning capacity, there must nevertheless appear some evidence, either direct or circumstantial, tending to show what the plaintiff was

---

[2] Although the dissent finds substantial variances on virtually every material issue, the motion for directed verdict argued only the single alleged inconsistency reviewed in this division. Moreover, alleged inconsistencies as to plaintiff's *estimates* of the precise measurement of the paper towel blob or the exact length of time she stood near the spill are not conclusively deemed binding, even if adverse to plaintiff. *Hansberger Motor Transp. Co. v. Pate*, 51 Ga. App. 877, 878 (3) (181 SE 796).

capable of earning both before and after the injury. . . .' [Cits.]" *Hunt v. Williams*, 104 Ga. App. 442, 446 (4), 448 (122 SE2d 149). In the case sub judice, the undisputed evidence is that, while she was transferred to the personnel department at West Central Georgia Regional Hospital, plaintiff remains employed without any evidence of diminution in her actual wages or future earning capacity. "[E]vidence that the plaintiff was employed . . . before [her] injury and that after the injury [she] returned to work . . . at a stated weekly wage, was insufficient to support the [charge] objected to, even though the evidence showed the plaintiff was permanently injured. *Hunt v. Williams*, 104 Ga. App. 442, 446 [(4), supra]." *Smith v. Burtts*, 116 Ga. App. 649, 650 (1) (158 SE2d 702). Contrary to plaintiff's contention, in the absence of evidence showing a diminution in the plaintiff's earning capacity, her stated fear of being fired at some future point is not competent evidence in support of pain and suffering or any other element of recoverable damages for the negligent injury to her person. See *Brush Elec. Light &c. Co. v. Simonsohn*, 107 Ga. 70, 72 (2), 73 (32 SE 902). The error in giving the unwarranted jury instruction on lost future earnings cannot be deemed harmless in this instance. *City Council of Augusta v. Owens*, 111 Ga. 464, 480 (9), 481 (36 SE 830). Accordingly, while we affirm the judgment in part, based upon the existing jury verdict finding DHR liable for plaintiff's personal injuries, we nevertheless reverse the judgment in part on the basis of the trial court's improper jury instruction as to damages. The case is remanded for a new trial, limited solely to the proper amount of damages. OCGA § 9-11-50 (e).

3. Defendant's third enumeration has been considered and is found to have been rendered moot.

*Judgment affirmed in part as to liability; reversed in part and remanded for a new trial as to damages. Pope, P. J., concurs. Beasley, C. J., Johnson and Blackburn, JJ., concur specially. Birdsong, P. J., Andrews, Smith and Ruffin, JJ., dissent.*

BEASLEY, Chief Judge, concurring specially.

1. There are a number of material factual disputes in this case, so we must take the evidence in favor of the verdict and assume that those disputes were resolved in accordance with plaintiff's version of the event. *Warren v. Cox*, 168 Ga. App. 818, 819 (3) (310 SE2d 569) (1983). The trial took several days, making it impractical to recite all of this evidence in an opinion. However, several aspects of it are particularly notable.

A young woman in the cafeteria line paid the cashier for her food and went to get a cup of soup adjacent to the coffee machines at the end of the counter. Two men were behind her in the line with their trays, which slide along metal bars parallel to the serving line. As she

picked up the cup of soup, it slipped from her hand and fell on the floor right in front of the cash register. She picked up the cup but left the soup. The two men who had seen this happen stepped over it and told the cashier that it had to be cleaned up so no one would slip on it, but that was not immediately done. The cashier admitted that she was supposed to warn people of spills and get them up as soon as possible. She did tell some people coming through the line, but she did not warn plaintiff. Plaintiff was behind several people down the line from the men who saw the spill occur. It is not clear from the record whether this was plaintiff's first trip through the line, when she brought her tray and the carryout box and paid for her own food before taking it to a table and leaving the box, or whether it was the second time, when she went back to pay for the carryout box and fell. That is, the soup may not have been there the first time she went through the line. Nor is it clear when the paper towels were put on top of the soup or who put them there.

At any rate, plaintiff watched for the cashier to motion her forward to make the second payment, and when she moved ahead, she slipped and fell on soup not covered by the paper towels. The cafeteria was very crowded and the soup was in a shaded area next to a floor baseboard. The jury had the benefit of diagrams which several witnesses referred to in their testimony, but we do not have them. The location and the physical conditions existing at the location when the incident occurred were thus better discernible by its members. They also observed and listened to the witnesses, which we cannot do. The jurors could thus better understand the testimony. This is not like summary judgment, where we review the identical record on which the trial court based its decision and reach our own decision de novo.

The court did not charge on the distraction theory as such, but it did charge on the general principles applicable to slip and fall cases, plain view, the plaintiff's duty to exercise ordinary care for her own safety, and comparative negligence. The jury, which comprehended the evidence far better than we can and determined the facts which we must accept, by its verdict found no negligence on plaintiff's part in that it did not reduce the claimed damages by any amount whatsoever. This is a close case factually and I find no authority to reverse the judgment as to liability.

2. I join in Division 2 of the majority opinion, with respect to damages.

I am authorized to state that Judge Johnson and Judge Blackburn join in this special concurrence.

ANDREWS, Judge, dissenting.

I join Judge Smith's dissent and write separately to note that

with this case and *Shubert v. Marriott Corp.*, 217 Ga. App. 184 (456 SE2d 680) (1995); apparently one may now trip over a battleship and recover if one states that he did not see it, or can verbalize any excuse for not seeing it.

SMITH, Judge, dissenting.

I respectfully dissent as to Division 1. In affirming the trial court's denial of a directed verdict in favor of the Department, the majority essentially abrogates the law of premises liability developed over the course of many years by *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980), and its progeny. Moreover, the majority ignores the clear application of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986), to the many contradictory statements made by Thomas.

In a "slip and fall" case, "not only must the plaintiff show that the defendant had knowledge of the presence of the foreign substance, but *the plaintiff must also show that he was without knowledge of its presence.* The customer must exercise ordinary care for his own safety, and must by the same degree of care avoid the effect of the merchant's negligence after it becomes apparent to him *or in the exercise of ordinary care he should have learned of it.* He must make use of all his senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to him." (Citations and punctuation omitted; emphasis supplied.) *Alterman Foods v. Ligon*, supra. We assume, without deciding, that the Department had *actual* knowledge of the hazard in question. However, if a plaintiff is unable to prove either element of the *Alterman* test, a failure of proof results. *Smith v. Wal-Mart Stores*, 199 Ga. App. 808, 810 (406 SE2d 234) (1991). In this case, the evidence demands a finding that Thomas failed to exercise ordinary care for her own safety.

The facts omitted by the majority and the special concurrence are crucial to the disposition of this case. Thomas had worked at the West Central Georgia Regional Hospital for over 18 years, and she had eaten at the cafeteria almost every day during that time. She testified that the cafeteria was not like an ordinary restaurant "where you have people in their right mind." She knew that the mental patients were careless with food and drink and that the hospital had changed from carpet to tile in the cafeteria because the patients spilled things so frequently.

Three other witnesses in the area of the spill saw and avoided the spill immediately before Thomas fell. The witnesses and Thomas described it as a "humplike something" or "blob" about a foot square, covered with a pile of paper towels. Thomas originally testified the spill was about 12 inches square, although she later testified she did

not know how large it was. Thomas passed the spill for the first time while going to a table. She acknowledged that on this earlier occasion nothing prevented her from seeing the spill "because nobody was standing there," but she did not look down at the floor because she was looking straight ahead.

After returning to the area of the spill for a second time,[3] Thomas stood, leaning against the wall, for *three or four minutes* "right there at" the spill. During this time, she watched other customers, spoke to a friend, and waited for the cashier to call her to pay for her order. However, she did not look down. Even while walking or standing in pedestrian traffic, Thomas had a duty to exercise ordinary care for her own safety. *Colevins v. Federated Dept. Stores*, 213 Ga. App. 49, 52 (3) (443 SE2d 871) (1994). Moreover, " '[w]hen a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom. (Cits.)' [Cit.]" *Lea v. American Home Equities*, 210 Ga. App. 214 (435 SE2d 734) (1993).[4] Thomas's testimony "is fatal in this case." *Jester v. Ingles Market*, 206 Ga. App. 327, 329 (425 SE2d 323) (1992).

Thomas's testimony at trial, which is heavily relied upon by the majority and special concurrence, varied substantially from her deposition testimony on virtually every material issue, including such matters as whether she knew of the frequency of spills in the cafeteria, whether she could have seen the spill, how long she stood beside it, and whether or not she was distracted. Such contradictory testimony must be construed against her. "Where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to a directed verdict. [Cit.]" *Prophecy Corp.*, supra. Thomas's attempted justification for one of these many material variances, cited by the majority, does not address or explain the variance on the basis of a

---

[3] Contrary to the contention in the special concurrence, Thomas testified on her *deposition* in response to the question "Did you pass by that spot where the spill was," "I turned and yeah I would have passed by the spot. . . ." Only at trial did she change her testimony to contend that she did not know if the spill was there when she passed it for the first time. This illustrates the danger of ignoring the safeguards established by *Prophecy Corp.*, supra, and accepting without question the "improved" and contradictory testimony of a party witness at the trial of a case. Moreover, regardless of whether Thomas passed the spill on a previous occasion, it is undisputed that she stood next to it for three or four minutes without looking down.

[4] Contrary to the majority's contention, *Lea* and the decisions upon which it relies are not confined to cases of actual knowledge on the part of the plaintiff. See, e.g., *Anderson v. Dunwoody North Driving Club*, 176 Ga. App. 210, 211 (335 SE2d 451) (1985) (constructive knowledge of debris at edge of tennis court inferred from plaintiff's opportunity to observe over time). *Cedartown-Polk County Hosp. Auth. v. Watwood*, 195 Ga. App. 321, 322 (393 SE2d 476) (1990), is inapplicable because Watwood traversed two different routes upon entering and exiting the premises.

different legal burden of proof, *Broomberg v. Hudgens*, 206 Ga. App. 797, 799 (2) (426 SE2d 617) (1992), or on the basis of newly discovered or recollected facts, *Prophecy Corp.*, supra at 31 (3). In essence, she offers as explanation that her deposition testimony was the result of persistent cross-examination by opposing counsel. This is not a reasonable explanation as a matter of law. Nor does it address the many other material variances in her testimony.[5]

Contrary to the majority's contention, carrying a tray in a cafeteria, like pushing a shopping cart in a grocery, was a normal and customary task, well known to Thomas, and it did not relieve her of the obligation to watch her path. *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124 (438 SE2d 384) (1993). Nor did the presence of other patrons relieve her of her duty to look where she was going. *Colevins*, supra at 52. Moreover, Thomas's contention that she did not see the spill, in the testimony quoted by the majority, does not end the inquiry. The issue is not whether she in fact saw the spill, but whether she should have seen it in the exercise of ordinary care.

Thomas contends she was distracted from the spill by other patrons the first time she passed it, and by watching the cashier the second time. The focus of the "distraction doctrine," however, is whether the *defendant* created the distraction or reasonably could have anticipated its existence. *Riggs v. Great Atlantic &c. Co.*, 205 Ga. App. 608, 609 (423 SE2d 8) (1992). In *Riggs*, the plaintiff claimed she was distracted from a box in a grocery store aisle by her husband, who called her attention to the product she was seeking. This court held that the distraction created by plaintiff's husband "was not induced by defendant but was in the nature of being self-induced." Id. at 610. Thomas passed a large and clearly visible spill once, then returned to the same place and stood for three to four minutes watching the cashier at the register, watching other people, and speaking to a friend without seeing the spill within a few feet of her position. Any "distraction" Thomas claims resulted from these ordinary events occurring around her was self-induced rather than due to any conduct of the Department, and it does not relieve her of her responsibility to look where she was going. "To say otherwise would permit customers to barge heedlessly around a store looking . . . anywhere but in their paths, with no care for their own safety and the safety of others. This would render the proprietor an insurer of his customers' safety, which he is not. [Cit.]" *Minor*, supra at 124.

The spill was large and clearly visible to three other witnesses. Thomas passed it twice and stood immediately next to it for three or

---

[5] The special concurrence contends that we must construe the evidence in favor of the jury verdict. However, this is not the case when evidence has been improperly submitted for the jury's consideration over the prohibition of *Prophecy Corp.*

four minutes, and nothing prevented her from seeing it if she had looked. The circumstances she claims constituted "distractions" were created not by the Department but by her own conduct. Moreover, she was thoroughly familiar with the premises and aware of the unusual risk for spills in the area. Under these circumstances, Thomas has failed to carry her burden under *Alterman* of showing exercise of due care for her own safety. The trial court improperly denied the Department's motion for a directed verdict. For these reasons, I respectfully dissent.

I am authorized to state that Presiding Judge Birdsong, Judge Andrews and Judge Ruffin join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 31, 1995 — 

*Michael J. Bowers, Attorney General, William C. Joy, Grace E. Lewis, Senior Assistant Attorneys General,* for appellant.
*Richard F. Dodelin,* for appellee.