## A94A2768. SHUBERT v. MARRIOTT CORPORATION.
(456 SE2d 680)

JOHNSON, Judge.

Margaret Shubert brought this action for negligence against Marriott Corporation for injuries suffered in a cafeteria operated by Marriott. The trial court granted Marriott's motion for summary judgment and this appeal followed.

Shubert tripped and fell while getting her lunch at a cafeteria operated by Marriott. Shubert picked up a tray from a raised counter and was carrying it in front of her. It is uncontroverted that the cafeteria was very crowded, with three lines of people waiting in food lines. The salad bar was located beyond the food lines, requiring those wanting salad to get their trays and utensils and then move through the crowd. A small recessed area in which a utility cart had been placed by a Marriott employee was located at the end of the serving counters. Although the alcove was deep enough to accommodate the cart, the cart had been placed in such a way that the bottom front edge protruded approximately six to eight inches beyond the front of the tray counter. As she worked her way through the crowd to the salad bar, Shubert was bumped from behind and turned to see the source. At that moment, Shubert's foot caught on the protruding metal edge of the cart causing her to fall forward. Her elbow was fractured in the fall. Marriott's motion for summary judgment asserted that Shubert failed to exercise due care for her own safety. The trial

court, in a single sentence order, granted the motion.

Shubert testified that the tray she was carrying obscured her vision. Marriott relied on *Minor v. Super Discount Markets*, 211 Ga. App. 123 (438 SE2d 384) (1993) in its original motion for summary judgment and again on appeal for the proposition that carrying a tray would not excuse Shubert from exercising due care for her own safety. In *Minor*, the court noted that the plaintiff was familiar with shopping carts in general and knew that a shopping cart would obscure her view to a certain extent, which may have been a contributing factor to the plaintiff's fall. However, this was not the basis of the court's affirmance of the trial court's grant of summary judgment to the defendant. Rather, the court stressed that the plaintiff admitted that she was looking at the merchandise instead of where she was going, consequently failing to exercise ordinary care for her own safety. Here, whether Shubert exercised the requisite degree of care for her own safety while carrying a tray is a question for the jury to consider.

Marriott also continues to rely on *Froman v. George L. Smith, Ga. World Congress Auth.*, 197 Ga. App. 338 (398 SE2d 413) (1990) asserting that *Froman* stands for the proposition that a crowd will not excuse a plaintiff's inability to see and avoid a defect. A careful reading of *Froman*, however, reveals that the court based its decision on the fact that the plaintiff had traversed the same path for several days prior to the fall, giving the plaintiff an opportunity to become aware of a clearly visible expansion joint in the sidewalk. This court held summary judgment was appropriate because the plaintiff had negotiated the allegedly dangerous condition on several previous occasions, the proprietor did not have *superior* knowledge of the existence of the condition. In reviewing the facts of the case, the court noted the plaintiff's assertion that her view of the sidewalk was obscured by a crowd of people, but does not address that defense in the substantive portion of the opinion. Therefore *Froman*, supra, does not control. Although the record establishes that Shubert had eaten at the cafeteria on numerous occasions, the protrusion of the cart was not a static feature which she would have previously had the opportunity to observe.

Finally, the fact that Shubert turned around momentarily after being jostled should not defeat her claim as a matter of law. "[A] plaintiff may be excused from the otherwise required degree of care because of circumstances creating an emergency situation of peril. . . . The doctrine is further broadened to cover situations where the plaintiff's attention is distracted by a natural and usual cause, and this is particularly true where the distraction is placed there by the defendant or where the defendant in the exercise of ordinary care should have anticipated that the distraction would occur." (Citation and punctuation omitted.) *Kres v. Winn-Dixie Stores*, 183

Ga. App. 854, 855 (1) (360 SE2d 415) (1987). We recognize the long line of cases barring recovery when the distraction is self-imposed. See, e.g., *Wittenberg v. 450 Capitol Assoc.*, 207 Ga. App. 260, 263 (427 SE2d 547) (1993). It is a natural reflex upon being bumped to turn to see the cause. This action does not constitute a self-imposed distraction.

"In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence *and all inferences and conclusions* arising therefrom most favorably toward the party opposing the motion." (Emphasis in original.) (Citation omitted.) *Sunamerica Financial v. 260 Peachtree Street*, 202 Ga. App. 790, 793 (2) (a) (415 SE2d 677) (1992). Here, it can be inferred that a Marriott employee placed the cart in such a position so as to create a hazard. Under these circumstances we cannot say as a matter of law Shubert failed to exercise ordinary care for her own safety. Neither is this the proper forum to determine whether Marriott discharged its obligation to exercise reasonable care for the safety of an invitee with regard to the placement of the utility cart. Accordingly we reverse the trial court's grant of summary judgment to Marriott.

*Judgment reversed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Blackburn, Smith and Ruffin, JJ., concur. Andrews, J., dissents.*

ANDREWS, Judge, dissenting.

Shubert tripped over the edge of a cafeteria tray cart which was protruding slightly beyond the front of a tray counter along which she was walking. The tray cart was in an alcove next to the tray counter. Instead of being flush with the edge of the tray counter, the cart was in a position about six to eight inches further extended than the counter. As she walked immediately adjacent to the counter, Shubert's left foot tripped on the six or eight-inch extended portion of the cart and she fell. Shubert, who had been in the cafeteria many times before, testified that she had seen cafeteria personnel roll the cart in and out of the alcove, but she had never seen it left there. She claims that the existence of the tray cart six to eight inches past the edge of the tray counter was a dangerous condition on the premises which was the proximate cause of her fall.

In deposition testimony, Shubert admitted that the extended portion of the cart would have been plainly visible to her, but for the fact that she was carrying a cafeteria tray at the time of her fall and was walking in crowded lunchtime conditions.

"Q: Was anything blocking your view of that part of the cart? A: Yes, I had my tray with my napkin on it waist high in front of me. Q: How far ahead of you would you estimate that blocked your view?

A: I just couldn't see my feet. . . . Q: So it was just immediately below where your feet were that the tray would have been blocking your line of sight? A: Yes. Q: Was there anything else other than the tray that was blocking your vision? A: The crowd."

Shubert also testified that she was bumped from behind and looked back as she walked in the crowd at about the time of her fall. Shubert testified that she could not recall whether or not her head was turned when she bumped the cart, and that, in any event, she would not have been able to see the cart because she could not see her feet. "Q: So at the time your foot hit the cart, was your head turned back looking to see what bumped you or was it turned forward; do you recall? A: I honestly couldn't tell you."

When asked if the fall would still have occurred even if she had not been bumped, Shubert responded: "I wouldn't have seen the cart because I didn't see my feet." Shubert did not allege in her complaint and did not argue in response to the motion for summary judgment that this reflexive action on her part was a distraction as discussed in *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375 (124 SE2d 688) (1962), and subsequent "distraction theory" cases. She did not take this position on appeal, and argued in her appellate brief that the turning of her head in response to a bump from behind did not contribute to her tripping over the cart. In discussing Shubert's reflex action to the bump in terms of the distraction line of cases, the majority raises an issue not raised by the appellant in the trial court or on appeal. Moreover, I am not aware of any case where a reflex action to a bump in a crowd of people has been accepted under the distraction rule, and the cases cited by the majority do not support this proposition.

Shubert does not claim that a lesser degree of caution was sufficient to constitute ordinary care because she was distracted by something attributable to the proprietor, or because of a "natural and usual cause," or because there were emergency circumstances creating stress or excitement. Compare *Redding*, supra. Rather, she testified that she was prevented from looking where she was walking because the tray she was carrying blocked her view, and that the crowd of people in the area prevented her from seeing the cart before she approached it. These are not conditions which excuse Shubert from the duty to exercise ordinary care to look where she walked and discover otherwise patently visible objects in her path.

As to the obstruction caused by the food tray Shubert was carrying, although she testified that it obscured her vision, she has never contended in the trial court or on appeal that, because she was carrying a tray which blocked her vision, she was excused from seeing and avoiding the cart. This court has previously held that a plaintiff who obscures his own vision by holding an object in front of himself as he

walks has, as a matter of law, failed to exercise ordinary care for his own safety. *McMullan v. Kroger Co.*, 84 Ga. App. 195 (65 SE2d 420) (1951); *Moore v. Kroger Co.*, 87 Ga. App. 581, 582 (74 SE2d 481) (1953). "Under the law, the defendant is not bound to anticipate that its customers would so disregard their own safety as to obstruct their vision with packages or sacks so as to be unable to see where they were walking. If . . . the plaintiff were holding the sacks so that he could not see his intended path a reasonable distance ahead, consistent with due regard for his own safety, then he himself was the author of and responsible for his injury. . . ." *McMullan*, supra at 198; *Moore*, supra at 582-583; see *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124 (438 SE2d 384) (1993).

The basis of Shubert's claim was that she did not spot the otherwise plainly visible obstruction because she was walking in a crowd. As to the crowded conditions, there is no suggestion here that the crowded lunchtime business at the cafeteria was itself a hazardous condition on the premises. Walking in crowded conditions is a commonly encountered situation, where it is to be expected that objects, otherwise plainly visible at a distance, may remain obscured from view until they are close at hand. Under these circumstances, the exercise of ordinary care for one's safety while walking requires diligence commensurate with the increased risk. The fact that one obviously cannot see as well in crowded conditions is not an excuse for failing to exercise the degree of ordinary care required under the circumstances. See *Froman v. George L. Smith, Ga. World Congress Auth.*, 197 Ga. App. 338 (398 SE2d 413) (1990). There is no evidence in the record showing why, in the exercise of ordinary care, the crowd prevented Shubert from discovering and avoiding the cart when she approached it, as apparently everyone else in the crowd approaching and passing it was able to do. She simply states that it was not visible because of the crowd of people in line surrounding the front of the cart. In fact, Shubert's own testimony establishes that the reason she was unable to see the cart when she approached close to it was not because of the crowd, but because her view was blocked by the tray she was carrying in front of herself at waist high level.

Although a proprietor has a duty to keep the premises safe for invitees, an invitee must by the exercise of ordinary care avoid the effect of the proprietor's negligence after it becomes apparent to her or in the exercise of ordinary care she should have learned of it. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). "The true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property. If the invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as

much knowledge as the proprietor does." (Citations and punctuation omitted.) *Huntley Jiffy Stores v. Grigsby,* 208 Ga. App. 634, 635 (431 SE2d 435) (1993). "The owner or occupier of land is under a duty to invitees to discover and either keep the premises safe from or warn of hidden dangers or defects not observable to such invitees in the exercise of ordinary care. However, there is no duty to warn against obvious or patent dangers which may be observed and avoided by the exercise of ordinary care." (Citations and punctuation omitted.) *Winchester v. Sun Valley-Atlanta Assoc.,* 206 Ga. App. 140, 142 (424 SE2d 85) (1992). Moreover, under the "plain view" rule "[o]ne is under a duty to look where he is walking and to see large objects in plain view which are at a location where they are customarily placed and expected to be; not performing this duty may amount to a failure to exercise ordinary care for one's safety as would bar a recovery for resulting injuries." (Citations and punctuation omitted.) *Wal-Mart Stores v. Hester,* 201 Ga. App. 478, 479 (411 SE2d 507) (1991).

The evidence shows that the cart at issue was in a location where it was customarily placed and that the six to eight-inch protrusion of the cart was a plainly visible and observable condition to one exercising ordinary care for their own safety under the circumstances. There is no evidence in the record showing any condition or circumstance legally excusing Shubert from the exercise of that degree of ordinary care which would have revealed the presence of the cart to her.[1] Since Shubert knew or should have known of the obstruction caused by the cart, the record shows that Marriott did not have the requisite superior knowledge of the condition. The record also shows that, in the absence of any legally cognizable excuse for not seeing the obstruction, this case is controlled by the "plain view" doctrine. Accordingly, Marriott was entitled to summary judgment under the superior knowledge rule and the plain view doctrine. *Hadaway v. Cooner Enterprises,* 172 Ga. App. 113, 114-115 (321 SE2d 830) (1984); *Huntley Jiffy Stores,* supra at 635-636; *Emory Univ. v. Duncan,* 182 Ga. App. 326, 328-329 (355 SE2d 446) (1987).

DECIDED MARCH 17, 1995 — ▇▇▇▇▇▇▇▇
Slip and fall. Fulton State Court. Before Judge Shoob.
*Allan L. Galbraith,* for appellant.

---

[1] Present case law recognizes only two legal excuses — the distraction rule (e.g., *Redding,* supra) and the rule of necessity (e.g., *Fitzgerald v. Storer Cable Communications,* 213 Ga. App. 872, 874 (446 SE2d 755) (1994). By recognizing walking in a crowd with a tray as an excuse, the majority opinion signals that virtually any "excuse," short of walking blindfolded, may now be sufficient to preclude application of the "plain view" rule as a bar to recovery.

*Gorby & Reeves, Michael J. Gorby, Blake H. Frye,* for appellee.