A95A2195. BRANCH v. ALLIANCE SYNDICATE, INC. et al.
(469 SE2d 807)

McMURRAY, Presiding Judge.

Branch, an independent insurance agent acting through his closely held corporation, solicited quotes for a general liability policy for a client, Glasstream Boats, Inc. ("Glasstream"). A policy written by Alliance Syndicate, Inc. ("Alliance") was obtained through an insurance broker. Glasstream was obligated to pay an initial minimum premium with the final premium to be determined at the expiration of the policy period and based on the total sales of the company.

Branch was to collect premiums from the insured, deduct a com-

mission, and remit the balance to the broker. The initial premium was collected in this manner, but after the expiration of the policy period the insured, Glasstream, questioned the amount of the audit premium it was billed.

On October 21, 1988, and following the audit, Alliance invoiced Commercial Insurance Broker, Inc. ("CIB"), which had replaced the original insurance broker as the broker of record. This invoice showed a gross audit premium due of $140,817 with a net due Alliance of $123,918.96, representing a 12 percent broker's commission. CIB, in turn, invoiced Branch's corporation which, after billing Glasstream, learned that the insured maintained that the audit was incorrect and provided this information to CIB.

On January 13, 1989, Alliance's chief financial officer contacted Hughes of CIB and requested an explanation as to why the premium had not been collected. Hughes was given until January 18, 1989, to collect the audit premium and told that if the premium was not collected by then Alliance's agency relationship with CIB would be terminated.

Hughes did not collect the audit premium and Alliance retained a collection agency known as Night Score which sent employees to Glasstream which again raised questions as to the accuracy of the audit. Subsequently, Alliance reduced the audit premium because auditors had incorrectly included freight charges in the sales figures upon which the audit premium was based. Branch participated in reviewing the revised audit premium for correctness and was informed that Alliance and Glasstream had agreed to installment payments for satisfaction of the audit premium.

The agreement between Alliance and Glasstream called for five weekly payments of $25,000 and a final payment of $7,047 due March 3, 1989. The initial installment payments from Glasstream to Alliance were made in a timely manner, but the fourth weekly installment was late and the fifth payment was for the reduced amount of the final payment. The remaining installment payment was not forthcoming despite numerous telephone calls from Alliance.

On June 15, 1989, Branch's corporation was served with a lawsuit filed by CIB seeking to recover under its contract with the corporation the amount of the audit premium less amounts paid by Glasstream to Alliance. Branch called Hughes to inquire as to the reason for the lawsuit and was told that Glasstream still owed $25,000 under the installment plan and was told by Hughes to collect it. Branch called Glasstream and was told to come the next day and pick up a check for the $25,000 remaining balance of the audit premium.

The following day Branch went to Glasstream and collected the $25,000 remaining on the audit premium, a copy of the installment payment schedule, and copies of cancelled checks from earlier pay-

ments under the installment plan. Glasstream requested a hold harmless agreement from CIB because of its concern over the installment payment plan.

On June 21, 1989, Branch remitted to CIB the amount of $19,367.32 representing the $25,000 less a four percent commission (apparently upon the entire audit premium, including sums paid directly to Alliance under the installment agreement) along with a request for a hold harmless agreement for Glasstream from CIB. Neither Hughes nor CIB remitted any of the Glasstream funds received from Branch to Alliance.

Subsequently, Alliance filed this action for conversion against CIB, Hughes, and Branch resulting in a verdict against these defendants jointly and severally in the amount of $25,000. Punitive damages and damages for attorney fees and expenses of litigation were awarded against CIB and Hughes jointly and severally. This appeal is taken by Branch from the judgment entered against him. *Held*:

1. The first enumeration of error maintains that the trial court erred in denying Branch's motion for directed verdict. Branch argues that Alliance is estopped to deny the continuation of the agency relationship between itself and CIB so that the instructions to Branch to collect the final payment from Glasstream must be imputed to Alliance. But even if this contention is assumed to be correct, a verdict in favor of Branch was not demanded.

While Branch was entitled to retain a four percent commission from premiums he and his company were authorized to collect, at least a question of fact remained as to their entitlement to a commission on audit premiums collected directly by Alliance under the installment plan through the efforts of Night Score and without their participation. Thus, even if his actions were otherwise proper, a judgment against Branch for conversion could have been predicated on his retention of "commissions" in excess of those to which he was entitled.

Additionally, there was evidence which, a jury might determine, should have alerted Branch to the termination of the agency relationship between Alliance and CIB. Months before the alleged conversion, Branch learned that Alliance had retained another agent to collect the premium on the Glasstream policy and knew Alliance and Glasstream had entered into an agreement for installment payments. There is also ample proof that Branch recognized that the installment payment plan might adversely affect his right to commissions on the audit premium. These events were followed by a period of five months during which Branch had no involvement in any further activity concerning collection of the audit premium. Finally, before transferring the funds received from Glasstream to CIB, Branch had received a copy of the installment payment agreement which called

for direct payment from Glasstream to Alliance. If Branch should have known that CIB was no longer an agent of Alliance, his actions in collecting the funds and forwarding them to CIB were clearly unauthorized. The trial court's denial of Branch's motion for directed verdict was not error. *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174, 176 (1) (b) (456 SE2d 724).

2. Under the circumstances of the case sub judice, Branch's reliance upon the maxim, that an action for conversion will not lie for the recovery of money, is misplaced. The present case involves a well identified exception to the general rule, that is, where the allegedly converted money is specific and identifiable such as insurance premiums earmarked for remittance to the insurer. *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85, 89 (4) (c) (460 SE2d 545).

3. Next, Branch contends the trial court erred in failing to provide a jury verdict form which would permit the jury to specify the particular damages to be recovered of each defendant severally. But the construction of OCGA § 51-12-31 (formerly Code Ann. § 105-2011) upon which this contention is predicated has been rejected by our Supreme Court. "In *Ivey v. Cowart*, 126 Ga. 159 (6) (52 SE 436) [the Supreme Court of Georgia] stated that, 'The jury in their verdict may specify the particular damages to be recovered of each [defendant], and judgment will then be entered severally. But the defendants are not entitled to require damages to be apportioned by the verdict.'" *Standard Oil Co. v. Mount Bethel United Methodist Church*, 230 Ga. 341, 344 (5) (196 SE2d 869).

4. In the three remaining enumerations of error, Branch maintains that certain jury charges requested by plaintiff were not properly adjusted to the evidence presented at trial. Each of the contested charges was a correct statement of law and, contrary to Branch's arguments, addressed issues posed by the evidence presented at trial. These enumerations of error are without merit.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED MARCH 11, 1996.

Reinhardt, Whitley & Wilmot, William D. Reinhardt II, Robert C. Wilmot, for appellant.

Richard J. Dreger, Rex P. Cornelison III, for appellees.