A96A0551, A96A0552. BRIDGES FARM, INC. v. BLUE;
and vice versa.
(472 SE2d 465)

McMurray, Presiding Judge.

Plaintiff Scott Wayne Blue brought this tort action against defendant Bridges Farm, Inc., seeking to recover for personal injuries sustained when plaintiff, allegedly as "an invitee upon the premises of Brides Farm, Inc., [was] gratuitously assisting Wayne Bridges and Ricky Cauley in sorting some cattle and moving cattle from one portion of Bridges Farm, Inc. to another portion of said farm." Plaintiff was leaning for support against a metal fence gate, which collapsed allegedly as a result of broken hinges, "causing the plaintiff to be knocked down and . . . seriously injured as a result of the onrushing

cattle." Wayne Bridges, as agent for defendant, allegedly "failed to warn or . . . alert the plaintiff to the fact that said fence was broken and thus unsafe for use . . . in moving said cattle." Defendant denied the material allegations and contended that plaintiff, while fully aware of the risks attending the herding of cattle, voluntarily left a place of safety (his horse) and, while on the ground in the midst of the cattle, was "kicked in the knee by a cow and was swept off his feet. . . ."

The case was tried before a jury which returned a general verdict awarding plaintiff $50,000 for the permanent injuries to his knee. Defendant's motion for new trial was denied, and this appeal in Case No. A96A0551 followed. Plaintiff cross-appeals in Case No. A96A0552. *Held*:

### Case No. A96A0551

1. Defendant enumerates as error the trial court's instruction on future medical expenses, arguing there is no evidence to support this charge. We agree.

Plaintiff's medical expert, Dr. John Allen Waldrep, testified that plaintiff reached maximum improvement after orthoscopic surgery while sustaining a permanent partial disability of five percent for his lower leg and "two percent of the body as a whole." There is a small area of "permanent numbness on the front of his knee." He may continue to "have some pain in his knee." Plaintiff may have some difficulty kneeling or climbing, "but otherwise, he should be able to perform his normal duties." Except for follow-up, Dr. Waldrep did not "expect [plaintiff] to have any further surgery for this." Nor did Dr. Waldrep foresee the need for any medication in the future. But Dr. Waldrep did see the possibility that excess scar tissue can cause an "inability to completely bend the nerve. It can cause pain and it can cause restriction of motion and localized tenderness and pain." He also affirmed the possibility that an "arthritic condition could develop as a result of this injury and surgery." The possibility is "not very high, but it is there." Consequently, Dr. Waldrep could not "say [plaintiff] won't develop some early arthritis," which could require medication. On cross-examination, however, Dr. Waldrep confirmed that, "more likely than not, [he did not] expect any arthritic development in this gentleman [plaintiff]." Dr. Waldrep agreed that talk of "arthritic development in [plaintiff] is sheer speculation at this point."

An award of future medical costs must be supported by competent evidence "to guide the jury in arriving at a reasonable value for such expenses." *Ga. Power Co. v. Watts*, 56 Ga. App. 322, 324 (4) (192 SE 493). Our examination of the record in the case sub judice "shows

that no evidence was presented from which the jury could ascertain, except by mere conjecture and speculation, that the plaintiff would ever have any such future expenses. The charge of the court was, therefore, erroneous. [Cits.]" *Clayton County Bd. of Ed. v. Hooper*, 128 Ga. App. 817, 818 (1) (198 SE2d 373). The error in giving this charge, however, goes only to the quantum of damages and does not affect the determination of liability vel non. Accordingly, "we affirm the judgment in part, based upon the existing jury verdict finding [defendant Bridges Farm] liable for plaintiff's personal injuries, [but] nevertheless reverse the judgment in part on the basis of the trial court's improper jury instruction as to [future medical expenses as a special item of] damages. The case is remanded for a new trial, limited solely to the proper amount of damages. OCGA § 9-11-50 (e)." *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174, 178 (2), 179 (456 SE2d 724). See also *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 823 (5), 824 (354 SE2d 6) (judgment affirmed on condition that unauthorized future medical expenses, awarded as special item of damages on special verdict, be written off).

2. Defendant next contends the trial court erred in precluding cross-examination of the plaintiff using the complaint for impeachment, under the following circumstances: At trial, defendant questioned plaintiff whether an allegation in the complaint that he was "leaning on the metal fence . . ." was contrary to his testimony at trial that "as far as to what actually made a connection with [his] leg I do not know, it came from behind." Plaintiff explained "I didn't understand it when [plaintiff's counsel] wrote the paper [i.e., the complaint]; I didn't realize that's what it said until the day you took my deposition and I told you on that date that that was not correct." When defendant asked plaintiff to read a portion of the complaint to the jury, plaintiff's counsel objected on the ground that the complaint constituted "no evidence, [and] it's been superseded by a pretrial order." Defendant replied that the complaint is "an admission against interest, it's a contrary allegation from what he's alleged here today." The trial court "sustain[ed] the objection to [plaintiff] reading his pleadings by virtue of the fact the pretrial order has been entered in this case."

On appeal, defendant argues for the first time that this allegation constitutes a *judicial* admission against interest, which the opposing party may introduce as conclusive evidence of the truth. See OCGA § 24-3-30. Pretermitting whether this contention both is accurate and was adequately raised below, we find the trial court's ruling that the pretrial order supersedes the complaint is tantamount to a withdrawal of the allegation. Moreover, plaintiff subsequently affirmed before the jury that, at his deposition, he testified he "didn't know what happened, . . . didn't know whether a cow kicked [him],

. . . didn't know whether [he was] knocked down by the gate and [then] a cow kicked [plaintiff] or . . . didn't know if just the gate did it or anything."

"The right to a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him." OCGA § 24-9-64. " 'The trial judge has a discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled by a reviewing court unless it is abused.' [Cits.]" *Western & Atlantic R. v. Burnett*, 79 Ga. App. 530, 531 (2), 532 (54 SE2d 357). "[W]here the purpose is to impeach or discredit the witness, great latitude should be allowed by the court in cross-examination." Id. at 533. In the case sub judice, we find "no abuse of discretion in refusing, on cross-examination of [the plaintiff], 'to allow questions repeated that have been *asked and fully answered.*' " (Emphasis supplied.) *McLeod Bros. & Co. v. Wilson Bros.*, 108 Ga. 790 (2) (33 SE 851). In the alternative, any error in unduly restricting cross-examination of the plaintiff was clearly harmless in view of the fact that the desired answer was cumulative of evidence introduced by other means. See *Gaither v. State*, 259 Ga. 200, 201 (2) (378 SE2d 464). This enumeration is without merit.

3. Defendant enumerates the refusal of the trial court to give requested instructions contrasting the duty of care owed to a licensee with that owed to an invitee, arguing the jury should have decided whether plaintiff was a "mere social visitor as opposed to an invitee," because plaintiff "gratuitously" assisted with the cattle.

It is undisputed that plaintiff was assisting in the herding of cattle gratuitously, in that he neither expected nor received compensation, either from his stepfather, Wayne Bridges, or from Bridges Farm. Wayne Bridges affirmed that "it was not uncommon for [plaintiff] to come and help [Wayne Bridges] on occasion and on occasion [Wayne Bridges] would go to [plaintiff's] farm and help him." In order to separate the calves from the cows, normally "[t]wo can do it; three works better." "Monetary consideration is not essential to the relationship of owner or occupier and invitee. Common interest or mutual advantage is sufficient. *Flint River Cotton Mills v. Colley*, 71 Ga. App. 288, 291 (30 SE2d 426)." *Norman v. Norman*, 99 Ga. App. 755, 760 (4) (109 SE2d 900). There being no evidence in the case sub judice that plaintiff's presence was anything other than for the common interest or mutual advantage of plaintiff and Wayne Bridges, the trial court did not err in refusing the requested instruction on the duty of care owed to a mere licensee.

*Case No. A96A0552*

4. Plaintiff contends the trial court erred in "permitting refer-

ences to collateral sources . . . in the presence of the jury. . . ." We disagree.

On cross-examination of plaintiff, defendant read from plaintiff's deposition, where it had been elicited that plaintiff was continuously employed after his injury, and sustained no "out-of-pocket . . . loss of income," in part, because plaintiff used all of his accumulated "sick leave that [he] had built up," to continue to collect a salary while he recovered. Plaintiff's objection on the basis of collateral source was overruled. Plaintiff subsequently explained that he could accumulate up to 700 days sick leave. He actually consumed 420 hours sick leave, which, had he not used them, could have been credited "towards [his] retirement." An examination of the jury instructions reveals no charge authorizing the jury to reduce plaintiff's recovery for any lost income to the extent his salary was paid during sick leave taken.

"[A]n evidentiary distinction between tort and contract cases does exist with regard to the applicability of the collateral source rule. The collateral source rule is applicable in tort cases because collateral source evidence cannot be admitted to diminish the defendant's liability for the actual harm that was caused by his tort. *Denton v. Con-Way Southern Express*, [261 Ga. 41 (402 SE2d 269)]." (Emphasis omitted.) *Amalgamated Transit Union &c. v. Roberts*, 263 Ga. 405, 406 (1), 408 (434 SE2d 450). In the case sub judice, however, we pretermit whether plaintiff's overly responsive answer at his deposition was properly admissible to show that he had not, in fact, sustained any lost wages or whether, in truth, proof that he was employed but paid for sick leave was an inadmissible showing of collateral source evidence. Rather, we find no reversible error in permitting defendant to demonstrate plaintiff's unique (and possibly irreparable) loss when he had to apply his accumulated sick leave, which was otherwise accruing towards his retirement benefits. Accordingly, this circumstance does not mandate a new trial, even as to damages.

*Judgment affirmed in part as to liability and reversed in part and remanded for new trial as to damages on the main appeal in Case No. A96A0551. Judgment affirmed on the cross-appeal in Case No. A96A0552. Johnson and Ruffin, JJ., concur.*

DECIDED MAY 30, 1996 —
RECONSIDERATION DENIED JUNE 19, 1996 —

*John T. Croley, Jr.*, for appellant.
*Varnell & Varnell, John D. Varnell*, for appellee.